TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00151-CV







The Comanche Nation and Jennifer Perry, Appellants


v.


Joseph N. Fox and Patricia M. Fox, Appellees








FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY

NO. 95-178-F26-FC1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING




O P I N I O N




 This case involves a post-answer default judgment in a child-custody dispute and
requires us to determine the proper standard under which to review a motion for new trial in such
a case. The child's mother, Jennifer Perry, and intervenor, the Comanche Nation, appeal a final
order modifying conservatorship of the child between Perry and the child's paternal grandparents,
Joseph and Patricia Fox. Perry and the Comanche Nation assert that the trial court abused its
discretion in denying their respective motions for new trial after both defaulted by not appearing at
the hearing on the Foxes' motion to modify the conservatorship. We will reverse the trial court's
denial of both motions and remand for a new trial.


BACKGROUND


 The child at the center of this dispute is the eleven-year-old daughter of Perry. Perry
and the child's father, Gregory Alan Fox, were never married. About ten months after the child was
born in 1992, Perry moved out of the house she shared with Gregory and left the child in his care. 
Gregory became the primary care-giver for the child, who lived with him until early 1995, when
Gregory was killed in an automobile accident. Shortly thereafter Joseph and Patricia Fox, the child's
paternal grandparents, filed a suit affecting the parent-child relationship (SAPCR), seeking to be
appointed managing conservators of their grandchild. The Foxes were concerned about Perry's
ability to parent the child because Perry had relinquished the care of the child to their son. The
district court of Williamson County, Texas, initially entered a temporary order in early 1995
establishing a temporary joint managing conservatorship to be shared by Perry and the Foxes. The
order also required Perry to undergo a psychological evaluation and attend parenting classes. A final
order was issued about a year later establishing a joint managing conservatorship between Perry and
the Foxes. Perry was made the primary joint managing conservator with the exclusive right to
establish the child's legal domicile. Perry subsequently moved to Oklahoma with the child. Perry
and the child are members of the Comanche Nation because of the ancestry of Perry's mother,
Francetta Gentry.

 In 2001, Ms. Gentry, as maternal grandmother, filed a petition for guardianship of the
child in the Court of Indian Offenses for the Comanche Tribe in Anadarko, Oklahoma. (1) Ms.
Gentry's motion alleged that Perry had abandoned and neglected the child and that the child had
lived with Ms. Gentry and her husband for three years. Ms. Gentry did not name the Foxes as parties
to her petition or notify them of the hearing. By chance, the Foxes found out about Ms. Gentry's
petition and filed a motion to dismiss for lack of subject-matter jurisdiction, asserting that the district
court of Williamson County is the court of original and exclusive continuing jurisdiction under the
Uniform Child Custody Jurisdiction and Enforcement Act. See Tex. Fam. Code Ann. §§ 152.201-.203 (West 2002). The Court of Indian Offenses considered Ms. Gentry's petition to be a motion
to modify the terms of the 1996 order and entered an order dismissing the petition for lack of
jurisdiction and remanding the custody of the child to the Foxes to exercise their right to summer
visitation under the Williamson County order. The Foxes then filed a motion in Williamson County
to modify the 1996 order, seeking sole managing conservatorship of the child and alleging that the
child's safety and well-being were at risk under Perry's care due to her drug abuse, refusal to abide
by the visitation schedule, and relinquishment of the care of the child to Ms. Gentry. The Foxes
additionally sought an immediate temporary restraining order to prevent Perry and Ms. Gentry from
making certain communications with the Foxes or the child and from committing certain acts, such
as removing the child from Williamson County. 

 In July 2001, the county court at law (2) of Williamson County held a hearing on the
Foxes' motion. Perry did not appear. (3) After hearing the Foxes' evidence, the court issued a
temporary order modifying the 1996 order by removing Perry as joint managing conservator and
appointing her possessory conservator. Perry filed her answer to the original motion to modify in
late July. About the same time, the Comanche Nation and Ms. Gentry filed motions to intervene in
the child-custody proceeding. The Comanche Nation also filed a motion, under the Indian Child
Welfare Act, to transfer jurisdiction over the child to the Comanche Tribal Children's Court for the
Comanche Tribe of Oklahoma, located in Lawton, Oklahoma. See 25 U.S.C.A. § 1911 (West 2001)
(in proceeding for foster care placement of, or termination of parental rights to, Indian child not
domiciled or residing within reservation of Indian child's tribe, state court shall transfer such
proceeding to jurisdiction of tribe, absent good cause to contrary, objection by either parent, or upon
petition of either parent or Indian child's tribe).

 In August 2002, the county court at law placed the case on the dismissal docket and
sent notice of this fact to the Foxes, Perry, Ms. Gentry, and the Comanche Nation. The notice stated
that anyone wanting to retain the case on the docket and obtain a trial setting would have to appear
at the court on September 26. The Foxes filed a motion to retain the case, and their attorney
appeared on September 26. Neither Perry, the Comanche Nation, nor Ms. Gentry filed a motion or
appeared. The court granted the Foxes' motion to retain and scheduled the case for a hearing on
November 25, 2002. Notice of the hearing was sent to Perry and the Comanche Nation by return-receipt mail.

 Only the Foxes appeared at the November 25 hearing. The Foxes' attorney did not
put on any additional evidence but referred the court to the previous temporary restraining order
hearing. The court granted the Foxes' motion to modify, retaining the terms of the temporary
conservatorship order: the Foxes became the child's managing conservators, and Perry became the
child's possessory conservator, with her access and possession of the child subject to supervision and
arrangement by the Foxes. Perry and the Comanche Nation filed motions for new trial. The court
held a hearing on the motions for new trial. The Comanche Nation's attorney and the Foxes'
attorney were present. Perry was also present but did not speak or put on evidence. The Comanche
Nation argued that its motion should be granted because it had met the Craddock elements. See
Craddock v. Sunshine Bus. Lines, 133 S.W.2d 124, 126 (Tex. 1939). Perry's motion made a
substantially similar argument. At the end of the hearing, the court denied Perry's and the Comanche
Nation's motions. Perry and the Comanche Nation appeal to this Court.


DISCUSSION


Standard of review

 We review a ruling on a motion for new trial under an abuse of discretion standard. 
Cliff v. Huggins, 724 S.W.2d 778, 778-79 (Tex. 1987); Smith v. Holmes, 53 S.W.3d 815 (Tex.
App.--Austin 2001, no pet.). An abuse of discretion occurs when a trial court fails to correctly
analyze or apply the law. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). Here, we must
determine whether the trial court correctly applied the Craddock test.


The Craddock test

 A trial court's ruling on a motion for new trial directed against a default judgment
must be guided by a three-prong test. See Craddock, 133 S.W.2d at 126. A court must grant the
motion if it determines that (1) the defendant's failure to answer before judgment was not intentional
or the result of conscious indifference on the defendant's part, but was due to a mistake or accident;
(2) the motion for new trial sets up a meritorious defense; and (3) the motion is filed at a time when
its granting would not result in a delay or otherwise injure the plaintiff. Id. The Craddock test also
applies to a post-answer default judgment entered when a defendant fails to appear at a trial setting. 
Director, State Employees Workers' Compensation Div. v. Evans, 889 S.W.2d 266 (Tex. 1994); Elite
Towing, Inc. v. LSI Financial Group, 985 S.W.2d 635 (Tex. App.--Austin 1999, no pet.). 

 Texas appellate courts have routinely applied the Craddock test to SAPCRs. See,
e.g., In re R.H., 75 S.W.3d 126, 130 (Tex. App.--San Antonio 2002, no pet.); In re A.P.P., 74
S.W.3d 570, 573 (Tex. App.--Corpus Christi 2002, no pet.); Lowe v. Lowe, 971 S.W.2d 720 (Tex.
App.--Houston [14th Dist.] 1998, pet. denied). However, the Fourteenth Court of Appeals has
criticized the applicability of the Craddock test to SAPCRs because of the difficulty of fitting the
"best interest of the child" into the second prong of a meritorious defense; yet, in the absence of any
other direction from the supreme court, that court has continued to apply Craddock. See Lowe, 971
S.W.2d at 725-726 ("[T]he meritorious defense prong does not lend itself to being applied to custody
cases" because "[u]nlike other suits, where clear defenses and claims exist, in family law, we have
only factors to be considered by the court in determining best interest."). Other courts have held that
in SAPCRs, a motion for new trial should be evaluated liberally. See Sexton v. Sexton, 737 S.W.2d
131, 133 (Tex. App.--San Antonio 1987, no writ) ("Courts should exercise liberality in favor of a
defaulted party . . . in passing on a motion for new trial . . . particularly [in] suits affecting the parent-child relationship. The extremely important decision of a trial court to change a managing
conservatorship should not be made casually based on the procedural advantage of one of the
parties."); Little v. Little, 705 S.W.2d 153, 154 (Tex. App.--Dallas 1985, writ dism'd) ("best
interests of the child override strict application of the Craddock test," citing C. v. C., 534 S.W.2d
359, 361 (Tex. App.--Dallas 1976, writ dism'd)). We agree with the Fourteenth Court of Appeals
that Craddock does not fit well into the context of a consideration of the best interests of the child. 
However, because the supreme court has not outlined a more fitting test for SAPCR proceedings,
we will also apply the Craddock test, but will do so liberally. See Lowe, 971 S.W.2d at 726.


Perry's motion for new trial

 Perry asserts that she met the first prong of the Craddock test because her failure to
appear at the November 25 hearing was the result of a mistake. Her motion and supporting affidavit
stated that she had mistakenly relied on the information given to her by an employee of the
Comanche Nation that she did not need to appear on November 25 because the case was going to
be postponed. The Foxes did not controvert this excuse. A defaulting party must provide some
excuse, though not necessarily a good excuse, for failing to timely file an answer or appear. See 
McClure v. Landis, 959 S.W.2d 679, 681 (Tex. App.--Austin 1997, writ denied). A "slight excuse"
will often suffice to set aside a default judgment. Ferrell v. Ferrell, 820 S.W.2d 49 (Tex.
App.--Corpus Christi 1991, no writ). Unless the opposing party controverts specifically the facts
alleged by the movant for a new trial, the latter will prevail on the issue of mistake. McClure, 959
S.W.2d at 681. Where factual allegations in a movant's affidavits are not controverted, a conscious
indifference question must be determined in the same manner as a claim of meritorious defense. It
is sufficient that the movant's motion and affidavits set forth facts that, if true, would negate
intentional or consciously indifferent conduct. Strackbein v. Prewitt, 671 S.W.2d 37, 38-39 (Tex.
1984). 

 Here, the trial court erroneously looked to the series of three hearings at which Perry
failed to appear to conclude that such a pattern indicated conscious indifference. However,
"conscious indifference" as it appears in the Craddock test does not refer to the movant's overall past
attitude towards the case or, more specifically, her willingness or ability to parent. Rather, the
movant's excuse must explain her failure to appear at the hearing at which she defaulted and to
which the default judgment pertains. We believe that although Perry failed to appear at the hearing
on the temporary order and at the dismissal-docket hearing, it is her failure to appear at the final
modification hearing on November 25 that we must evaluate.

 We conclude that Perry's failure to appear at the November 25 hearing was the result
of mistake rather than conscious indifference. Although her excuse--reliance on a third party's
assertions who has no apparent legal authority or responsibility to Perry or her legal rights--is not
a very good excuse, we note that the record indicates that Perry has been appearing pro se throughout
the modification proceedings and is indigent. Thus, her good faith reliance on the advice of an
ostensible authority figure in the Comanche Nation should not be held against her in determining her
right to a new trial, especially in light of the fact that the Foxes have not controverted her assertion
of mistake and the fact that this is a SAPCR, for which we will liberally apply the Craddock
elements. We conclude that Perry has met the first prong.

 In addressing this prong of the Craddock test, the dissent, like the trial court perhaps,
erroneously focuses on Perry's conscious indifference to earlier proceedings, rather than her excuse
for failing to appear at the hearing at which the default judgment was entered. The temptation to
evaluate a parent's indifference to her parenting responsibilities, rather than her indifference to
appearing at the critical hearing, is yet another reason why the Craddock test is ill-suited to
evaluating a motion for new trial in a SAPCR.

 Perry argues that she met the second Craddock prong because her motion and
supporting affidavit set up a meritorious defense. A meritorious defense is one that, if proven, would
cause a different result on the retrial of the case, although it need not be a totally opposite result. 
Ferguson & Co. v. Roll, 776 S.W.2d 692, 698 (Tex. App.--Dallas 1989, no writ). Perry asserts that
her motion set forth a "multi-faceted defense involving the best interest of the child." On closer
examination of her motion and affidavit, we find that Perry asserted the following: that she is the
natural mother and sole living parent of the child; that the child's home state was Oklahoma; that
the child did not have a significant connection with Texas at the time of the filing of the motion to
modify; that substantial evidence of the child's care, protection, training, and personal relationships
in Texas was not available when the motion to modify was filed; that Perry desires to preserve her
parental rights and relationship with the child; that Perry is able to provide for the needs of the child;
that Perry desires to preserve the child's relationship, rights, and heritage as a member of the
Comanche Nation, and that the Foxes will not be able to preserve such relationships and heritage;
that the child has a meaningful and significant relationship with other members of her extended
family, who are members of the Comanche Nation, and who live nearby Perry's residence and are
able and willing to provide assistance to Perry in raising the child; that Perry allowed the Foxes to
have possession of the child for a summer visitation in 2001, but that the Foxes did not return the
child at the end of the visitation period, and that Perry was financially unable to hire an attorney to
seek the return of her daughter; that the child was enrolled in public school in Oklahoma during the
time she resided with Perry and that the school records are located in Oklahoma; and that it is in the
child's best interest that Perry remain primary joint managing conservator. The Foxes' response to
Perry's motion was a general denial and did not controvert her alleged meritorious defense. 

 We conclude that Perry's asserted defense concerning the child's best interests is
sufficiently meritorious to meet the second prong. Applying the Craddock elements liberally
because this is a SAPCR, we believe that this evidence going to the best interest of the child that was
not heard by the trial court is adequate, if proven, to have produced a different result. Because the
trial court heard only the Foxes' minimal evidence--received earlier at the temporary-order hearing,
and merely referenced at the final-order hearing--the court could not have considered Perry's
evidence going to the best interests, especially the interest of the child in maintaining her relationship
with her Comanche family and heritage, in determining whether and how to modify the order. We
note that the order entered by the trial court permits no visitation rights with any of the child's
Comanche family, including the maternal grandmother. Moreover, Perry herself was granted no
specific visitation rights, only such contact as the paternal grandparents might approve. Denying any
specific visitation to a parent is unusually harsh, absent extraordinary findings supported by evidence
in the record. The child has already lost one parent; now that there is no enforceable right for Perry
or her family to visit, the child may lose all contact with her other parent.

 The question of whether it is in the child's best interest to terminate all contact with
her mother, her maternal grandmother, and her Comanche heritage can best be answered after a full
evidentiary hearing, not by enforcing a default judgment. The dissent says that the central focus of
a modification proceeding is not appellant's best interest, but the child's best interest. We agree. 
But ascertaining what is in a child's best interest is not a two-sided dispute where one party
"defends" against another's claims. Rather, the court must evaluate the total circumstances of all
parties and the child to craft a decision that affords the best solution for the child. In this appeal, we
do not evaluate whether the appellants have taken the child's best interest into account, but whether
the trial court has done so. That decision will undoubtedly be better informed after hearing from all
interested parties with standing. Our decision to remand this order affords the trial court the
opportunity to fully consider what arrangements are in the child's best interest.

 The third Craddock prong requires that the movant demonstrate that a new trial will
not cause delay or injury to the plaintiff. Perry alleged in her motion that there would be no delay
or injury as a result of a new trial; the Foxes did not make any allegations that a new trial would
disadvantage them in presenting the merits of their case at trial. In fact, the Foxes argued that their
continued custody of the child would only strengthen their case that the modification was
appropriate. Once a movant asserts that a new trial will not cause delay or injury, the burden shifts
to the nonmovants to show that they would suffer injury or delay. Cliff, 724 S.W.2d at 779. Because
the Foxes did not allege that they would be disadvantaged by a new trial, we conclude that Perry's
motion met the third prong. 

 Again, we respectfully disagree with the dissent's assessment of delay. The child's
everyday living arrangements will not be disturbed by remanding this cause for a full hearing. She
continues to reside with the Foxes, who have not alleged that any pertinent witnesses or evidence
will be unavailable. If anything, the longer the child remains with her paternal grandparents in a
stable relationship, the greater the likelihood that this arrangement will be continued after a full
hearing. Who will serve as managing conservator with the right to establish the child's primary
residence is only one of the many decisions that must be addressed in assessing the child's best
interest. Because Perry's motion for new trial met all three of the Craddock elements, we hold that
the trial court abused its discretion in denying it. (4) 


The Comanche Nation's motion for new trial

 The Comanche Nation's motion for new trial similarly asserted that it met the
Craddock test. With respect to the first prong, the Comanche Nation claims that its failure to appear
at the November 25 hearing was due to an accident or mistake made in the course of transitioning
the case from its Oklahoma attorney to its Texas attorney. According to the Comanche Nation's
motion, there was confusion about the nature of the trial setting, caused by the transfer of the case
between the attorneys. An attorney's mistake resulting from the transition of a case between
attorneys has been held sufficient to negate intentional or conscious indifference. See Evans, 889
S.W.2d 266, 269 (Tex. 1994). The Foxes did not controvert the Comanche Nation's excuse for
failing to appear on November 25. We find that the Comanche Nation's excuse was the result of
accident or mistake, rather than conscious indifference, and that it, therefore, met the first prong.

 The Comanche Nation asserts that it met the second Craddock prong because it had
two meritorious defenses: (1) the Williamson County court at law did not have jurisdiction over the
custody proceeding, under the Indian Child Welfare Act, see 25 U.S.C.A. § 1911(b) (West 2001),
and (2) the ordered modification was not in the best interest of the child. With respect to the
jurisdictional defense, the Comanche Nation asserts that for child-custody proceedings, a state court
must defer to a tribal court's jurisdiction unless the tribal court has declined to exercise its
jurisdiction. See 25 U.S.C.A. § 1911(b). It asserts that although the Court of Indian Offenses
effectively declined to exercise its jurisdiction when it dismissed Ms. Gentry's guardianship petition,
that court was not the correct tribal court for child-custody proceedings--the Comanche Tribal
Children's Court for the Comanche Tribe is the proper court for such matters. Furthermore, it
argues, neither the Comanche Nation nor Perry were parties to the guardianship proceeding initiated
by Ms. Gentry. Thus, it argues, the Court of Indian Offenses' dismissal of Ms. Gentry's petition did
not amount to a declination of jurisdiction, and the Williamson County court erred in not transferring
jurisdiction to the tribal court. 

 Without answering whether the Court of Indian Offenses or the Tribal Court was the
proper Comanche court to address custody matters, we review the Indian Child Welfare Act to
determine whether the Williamson County court has jurisdiction of this case. The Indian Child
Welfare Act applies only to "child custody proceedings," defined in the Act as the following: (1)
foster care placement, (2) termination of parental rights, (3) preadoptive placement, and (4) adoptive
placement. See 25 U.S.C.A. § 1903 (West 1999). Not included in the definition are proceedings
seeking to modify conservatorship arrangements, which is what we have here. See id. Indeed, the
Act's congressional findings reveal the intent that it apply only to situations involving the attempts
of public and private agencies to remove children from their Indian families, not to inter-family
disputes or divorce proceedings. See id. §§ 1901, 1903(b) (West 1999) ("an alarmingly high
percentage of Indian families are broken up by the removal, often unwarranted, of their children from
them by nontribal public and private agencies"). We disagree with the Comanche Nation that the
Indian Child Welfare Act applies to child-custody modification proceedings. (5) Therefore, the
Williamson County court properly has jurisdiction over this case and did not err in failing to transfer
jurisdiction to a tribal court. The Comanche Nation's first defense, therefore, is not meritorious and
does not meet the Craddock requirement.

 With respect to its defense concerning the best interest of the child, like Perry's
defense, the Comanche Nation made several assertions in its motion that, if proven, may have
resulted in a different arrangement for the child, based on the best interest of the child. These
included the following: that the child has a meaningful relationship with Comanche extended family
members and that she is entitled to substantial rights and valuable benefits as a member of the
Comanche Nation. (6) While Ivy v. Carrell requires a motion for new trial's meritorious defense to be
accompanied by affidavit or other supporting evidence, see 407 S.W.2d 212, 214 (Tex. 1966), and
the Comanche Nation filed only its motion and supporting brief, we disagree with the dissent that
there is no evidence in the record to support this defense, when the movant has asked the court to
consider the child's continued relationship with maternal relatives, some of whom are members of
the Comanche Nation. Perry's affidavit asserted that the child had a meaningful and significant
relationship with Perry's extended family, who are members of the Comanche Nation. This is
sufficient evidence to support the meritorious "defense" alleged by the Comanche Nation, that it is
in the child's best interest to maintain a connection with her Comanche relatives and heritage. This
defense has been sufficiently established for a SAPCR and is further evidence of the misfit between
the meritorious defense prong of Craddock and the review of default judgments in these cases. 
Applying the same reasoning to the Comanche Nation's meritorious defense that we applied to
Perry's, and because the "best interest of the child" is the sole concern in this proceeding to modify
conservatorship, we conclude that the Comanche Nation's motion for new trial met the second
prong.

 Lastly, for the same reasons that we concluded Perry met the third Craddock
prong--that the granting of the new trial would not bring injury or delay to the Foxes or the
child--we conclude that the Comanche Nation's motion also met this prong. Thus, the trial court
erred in denying the Comanche Nation's motion for new trial.


CONCLUSION


 The trial court did not review Perry's and the Comanche Nation's motions for new
trial under the liberal standard other courts have set forth for default judgments in SAPCRs and
which we follow today. Under this relaxed standard, we hold that the motions met the Craddock
elements. Therefore, we reverse the final order of the trial court modifying the conservatorship and
remand this cause for a new trial.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson: Opinion by Justice B. A. Smith;

 Dissenting Opinion by Justice Patterson


Reversed and Remanded


Filed: February 12, 2004
1. Courts of Indian Offenses, also known as "CFR Courts" because they are operated under
guidelines set forth in the Code of Federal Regulations, are operated by the Bureau of Indian Affairs
(BIA). Barbara Ann Atwood, Tribal Jurisprudence and Cultural Meanings of the Family, 79 Neb.
L. Rev. 577, 587-89 (2000); see 25 C.F.R. §§ 11.100 et seq. (2003). They were established in the
late nineteenth century as part of the BIA's policy to assimilate the Indians into mainstream
American society. Id. In addition to the traditional Courts of Indian Offenses, several tribes have
established their own judicial systems, known informally as "tribal courts," after the Indian
Reorganization Act of 1934 gave them greater rights. Id.; see also 25 U.S.C.A. § 1903(8) (West
2001); see generally 25 U.S.C.A. §§ 461-479 (West 2001).
2. The courts of Williamson County underwent a restructuring around 1999 due to the
creation of some new courts and changes in local policy. County Court at Law No. 3 was added in
1999. See Act of Apr. 23, 1999, 76th Leg., R.S., ch. 55, § 2, sec. 25.2481, 1999 Tex. Gen. Laws
118, 118 (codified as an amendment to Tex. Gov't Code Ann. § 25.2481). The county court at law
assumed jurisdiction of this case at that time.
3. According to the record, Perry has appeared pro se throughout the modification
proceedings.
4. We note that the trial court did not have any guidance from this Court before today
directing it to apply the Craddock elements liberally in evaluating default judgments in a SAPCR. 
But see Lowe v. Lowe, 971 S.W.2d 720 (Tex. App.--Houston [14th Dist.] 1998, pet. denied); Sexton
v. Sexton, 737 S.W.2d 131, 133 (Tex. App.--San Antonio 1987, no writ); Little v. Little, 705 S.W.2d
153, 154 (Tex. App.--Dallas 1985, writ dism'd); C. v. C., 534 S.W.2d 359, 361 (Tex. App.--Dallas
1976, writ dism'd).
5. Although the Comanche Nation asserts that the result of the modification order--the
removal of Perry as joint managing conservator to the position of possessory conservator, with
qualified visitation and possession--"effectively" terminated her parental rights, we conclude that
a suit seeking to terminate parental rights is substantially different from a modification suit and that
this case is clearly not a suit seeking to terminate Perry's parental rights.
6. We note that, although the record reflects no formal ruling on the matter, the trial court
implicitly granted Ms. Gentry's and the Comanche Nation's motions to intervene in this suit,
evidenced by the trial court's ruling on the Comanche Nation's motion for new trial and its sending
of notice of court settings to both Ms. Gentry and the Comanche Nation. A court may grant a person
who has had "substantial past contact with the child" leave to intervene in a pending SAPCR. See
Tex. Fam. Code Ann. § 102.004(b) (West 2002). On remand, the court may hear from any of the
intervenors evidence of factors that concern the best interest of the child.