Kerri LOWE, Appellant,

v.

Jerome Jason LOWE, Appellee.

No. 14–96–01329–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1998.

Ronald R. Pope, Richmond, for appellant.

Lenette Terry, Kelly McClendon, Angleton, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

Kerri Lowe ("Mrs.Lowe") appeals a default judgment in favor of Jerome Jason Lowe ("Mr.Lowe") in his suit affecting the parent child relationship. In the default judgment, the trial judge granted the divorce, appointed Mr. Lowe sole managing conservator of the couple's two children, appointed Mrs. Lowe possessory conservator of the two children, set child support, and divided the marital estate. Mrs. Lowe appeals on seven points of error. We reverse and remand for a new trial.

### THE CONTROVERSY

On July 15, 1996, the trial in the Lowe's divorce was scheduled to begin. At 9:00 a.m., the case was called for trial. Mr. Lowe's attorney, Lenette Terry ("Terry"), announced ready, but Mrs. Lowe's attorney, Greg Donnell ("Donnell"), announced not ready. Donnell then presented the trial court with a motion for continuance. In this motion for continuance, Donnell presented an order signed by another district Judge in a

case in which Donnell was the ad litem, requiring Donnell to examine and to inspect certain books and records at 10:00 a.m. on July 15, 1996. The order also contained a protective order which prohibited/protected Donnell from appearing at any and all trial settings for the period of July 15–19. The trial judge in this case asked Donnell if he had anything else to present. When Donnell answered "no," the judge overruled the motion for continuance and told Donnell to be back at 10:30 a.m. to start selecting a jury in the Lowe divorce case. Donnell failed to show at 10:30 a.m. Promptly at 10:35 a.m., the trial judge began the trial in the Lowe divorce. The trial judge made no effort to locate Donnell other than to repeatedly ask whether Donnell was present in the courtroom. The judge proceeded with the trial without Donnell and Mrs. Lowe. After hearing evidence, the judge entered a default judgment for Mr. Lowe, (1) giving him custody of the couple's two young children, who were 3 and 5 years old at the time of the divorce, (2) awarding him the parties' home and other properties, and (3) ordering Mrs. Lowe to pay child support.

Mrs. Lowe, although she was a party to the divorce, did not know that these events were unfolding. Her lawyer, Donnell, had told her he had already obtained a continuance and that the trial was rescheduled. In her sworn affidavit attached to her motion for new trial, Mrs. Lowe explained that when he told her about the trial date continuance, Donnell gave her a timetable of when certain events should be completed to get the case ready for trial. The document contained things such as amending the original petition, amending answers to discovery requests, drafting a motion for contempt, preparing an inventory and appraisement, preparing witnesses for trial, and preparing the jury charge (which was dated "08–12/08–16"). Mrs. Lowe attached the document, prepared by Donnell on July 9, 1996, to her motion for new trial. The timetable stretched the discovery and preparation process from July 12, 1996 to August 16, 1996. *See* Appendix. Mrs. Lowe stated that if she had known that the trial was set for July 15, 1996, she would have attended court even without her attorney. But, she simply did not know about it.

As it was, the only events listed for July 15 on the timetable she had was a review of amended discovery answers, a reminder to draft a motion for contempt, and the preparation of the inventory and appraisement.

After the motion for new trial, the judge made the following findings of fact that have not been challenged on appeal:

3. The Court finds that Gregory Donnell, the attorney of record for respondent, was present and announced "not ready" at the call of the case for trial at 9:00 a.m. on 15 July 1996.

4. The Court finds that Gregory Donnell presented his motion for continuance to the Court at 9:00 a.m. on 15 July 1996, was offered the opportunity to present anything additional to his motion and declined to present any evidence in support of his motion.

5. The motion for continuance presented by Gregory Donnell was denied and counsel for both parties were instructed that jury selection would commence at 10:30 a.m. on 15 July 1996.

6. The Court finds that neither Gregory Donnell nor respondent appeared at 10:30 a.m. on 15 July 1996.

14. The Court finds that petitioner waived a jury. That respondent waived a jury by her absence and that of Gregory Donnell. All questions of fact and of law were submitted to the Court.

## DISCUSSION AND HOLDINGS

In seven points of error, Mrs. Lowe contends the trial court erred by rendering the default judgment against her, by improperly awarding managing conservatorship to Mr. Lowe, and by improperly dividing the marital estate. We need only address Mrs. Lowe's second point of error. In her second point of error, Mrs. Lowe contends the trial court erred in failing to grant her motion for new trial because she met the three prong test for a new trial after a default judgment. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939). We agree.

Citing to *Craddock,* Mrs. Lowe argues that the trial judge should have granted her motion for new trial because her failure to ap-

pear was the result of an accident or mistake and not the result of her own conscious indifference. *See id.* 133 S.W.2d at 126. Mr. Lowe responds that Mrs. Lowe cannot claim that her failure to appear was an accident or not the result of conscious indifference because she is charged with her attorney's knowledge and actions. Mr. Lowe also maintains that Mrs. Lowe's motion for new trial did not present a meritorious defense.

■ Since 1939, *Craddock* has been the seminal case setting forth the elements of proof a defaulting party must show to obtain a new trial following a default judgment. *See Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 390 (Tex.1993). The test set out in *Craddock* has not changed since it was first written. It contains three prongs, each of which a defaulting party must satisfy.[1]

1. Present facts showing that the failure to appear was not intentional or the result of conscious indifference but was due to accident or mistake;

2. Set up a meritorious defense; and

3. File the motion for new trial when it would not cause delay or otherwise injure the prevailing party.

*Craddock,* 133 S.W.2d at 126. Although *Craddock* was a no answer default judgment, the Supreme Court has held that it applies to post answer default judgments as well. *See LeBlanc v. LeBlanc,* 778 S.W.2d 865, 865 (Tex.1989). In addition, *Craddock* has been applied to all cases in which a default judgment has been entered, including divorce proceedings. *See Prince v. Prince,* 912 S.W.2d 367, 369–70 (Tex.App.—Houston [14th Dist.] 1995, no writ); *Burgess v. Burgess,* 834 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1992, no writ); *cf. Little v. Little,* 705 S.W.2d 153, 153–54 (Tex.App.—Dallas 1985, writ dism'd) (stating that although the *Craddock* test is applicable to motions for new trial after a default judgment in a divorce action, it may be superceded by the best interest of the child test).

■ As to the first prong of *Craddock,* Mr. Lowe is right: to meet *Craddock,* one must

prove that the failure to answer or appear was not the intent of the party *or her agent,* or the result of the party's *or her agent's,* conscious indifference. *See Director, State Employees Workers' Compensation Div. v. Evans,* 889 S.W.2d 266, 269 (Tex.1994); *Estate of Pollack,* 858 S.W.2d at 391; *Holt Atherton Indus. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992). This rule has been applied consistently by the courts. We have reviewed each of these cases and they fall into one of four categories. In the first category, the case law showed that when both the agent and the party acted intentionally or with conscious indifference the party has not passed the *Craddock* test. *See Holt Atherton Indus.,* 835 S.W.2d at 83. In the second category, the case law showed that when the *client* was partly responsible, either through intentional or conscious indifference, the party failed to pass the *Craddock* test. *See P & H Transp., Inc. v. Robinson,* 930 S.W.2d 857, 861 (Tex.App.—Houston [1st Dist.] 1996, writ denied), *Baker v. Kunzman,* 873 S.W.2d 753, 755 (Tex.App.—Tyler 1994, writ denied); *Wells v. Southern States Lumber and Supply Co.,* 720 S.W.2d 227, 229 (Tex.App.—Houston [14th Dist.] 1986, no writ). In the third category of cases, the case law showed that when the agent was negligent and the record was silent as to the client's culpability, the party failed to meet *Craddock. See Waste Water, Inc. v. Alpha Finishing & Developing Corp.,* 874 S.W.2d 940, 942–44 (Tex.App.—Houston [14th Dist.] 1994, no writ). In the fourth category, the case law showed that when the party took action initially by sending the citation to the agent, but the record was silent as to the actions taken by the agent, the party could not pass *Craddock. See Memorial Hospital Sys. v. Fisher Ins.,* 835 S.W.2d 645, 652 (Tex.App.—Houston [14th Dist.] 1992, no writ).

But this case does not fall under any of those categories. In fact, we have been unable to find a single case like this one, where the client made an uncontroverted showing by affidavit at the motion for new trial that she was absolutely free of responsibility for the failure to appear and showed, instead,

---

1. The party need not satisfy all three prongs when the party did not receive notice of the hearing or suit. *See Bryant v. Gamblin,* 829 S.W.2d 228, 229 (Tex.App.—Eastland 1991, writ denied).

that the failure to appear was caused by her lawyer's misrepresentation or at least, his failure to meet his professional duties to his client. We hope we have been unable to find such a case because it has never happened before. We suspect that is not the case.

Nonetheless, we hold that in this case, where (1) the lawyer has misled the client, or wholly failed to perform his or her professional duties, and (2) the client is free of responsibility and knowledge, the client meets the first prong of *Craddock* by showing her own lack of knowledge or lack of responsibility. For example, in this case, Mrs. Lowe's lawyer told her the July 15 trial was continued and he gave her a timetable which supported that statement. To her knowledge, the trial was continued, and we are not going to hold her responsible for her lawyer's apparent fraudulent actions.

> As a general rule, so long as the agent acts within the scope of his employment, in good faith, and for the interest of his principal, the agent is presumed to have disclosed all facts that come to his knowledge. The exception to this rule is that the agent's knowledge is not imputed to the principal when the agent engages in fraudulent conduct. . . .

*Kirby v. Cruce,* 688 S.W.2d 161, 168 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (citations omitted). We think this rule and its exception can and should be applied to this situation and we find nothing in the default judgment arena to contradict this conclusion. We, therefore, conclude that Mrs. Lowe met the first prong of *Craddock*.

To meet the second prong of the test, Mrs. Lowe had to "allege *facts* which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence prov-

ing prima facie that the defendant has such meritorious defense." *Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex.1966); *see Estate of Pollack,* 858 S.W.2d at 392.

The second prong of *Craddock* is rather difficult to apply to a suit affecting the parent-child relationship where the primary question before the court is what is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 14.07 (Vernon 1986).[2] "Trial courts have wide discretion in determining what is in the best interest of the child."[3] *Hirczy v. Hirczy,* 838 S.W.2d 783, 785 (Tex. App.—Corpus Christi 1992, writ denied). In 1976, the Texas Supreme Court gave a nonexhaustive list of factors to be considered in determining best interest of the child. *See Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1976). These factors are:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Id.* (footnotes omitted).

■■ In her motion for new trial, Mrs. Lowe alleged three facts pertaining to the question of custody. First, in her sworn motion, she alleged that the court-appointed investigator recommended that Mrs. Lowe

---

2. The proceedings involved in this appeal began before April 20, 1995, the effective date of the recodified family code. *See* Acts 1995, 74 th Leg., Ch. 20, § 3(a). By legislative mandate, the law in effect on the date the proceedings commenced governs this case. *See id.* Therefore, all references to the family code are to the code in effect at the time the divorce proceedings began. However, for reference purposes, we will cite to the current family code in footnotes. For the current codification, see TEX. FAM.CODE ANN. § 153.002 (1996).

3. According to two highly regarded family law experts, "[a]lthough this probably is the most quoted section in the Family Code, it does not provide much guidance to predict the outcome of a case. Discretion of the trial court is extraordinarily broad; 'best interest' is usually in the eye of the beholder." *See* JOHN J. SAMPSON ET AL, SAMPSON & TINDALL'S TEXAS FAMILY CODE ANNOTATED 393 (7 th ed.1997).

be made primary caretaker of the children. Second, in her affidavit, she pointed out that the children were only three and five years old. Finally, she stated that Mr. Lowe had never taken care of the children for extended periods of time. We hold that these three facts are some evidence that, if presented at trial, would have entitled her to joint managing conservatorship, if not sole managing conservatorship. In deciding whether the appellant has met this prong, we are not to try the issue or consider conflicting testimony offered to refute the defense. *See, e.g., Estate of Pollack,* 858 S.W.2d at 392. Thus, we look only to the facts presented by the defaulting party. *See id.* In this cause of action, Mrs. Lowe presented facts to the trial court which could have entitled her to more than what she was awarded. Under the *Craddock* test, we conclude these facts are all she needs to show.

■■ The purpose of the third prong of *Craddock* is to protect the plaintiff against the sort of undue delay or injury, such as the loss of witnesses or other valuable evidence, that would disadvantage the plaintiff in presenting the merits of the case at the new trial. *See Evans,* 889 S.W.2d at 270. Mrs. Lowe met this requirement by stating that she was willing to pay court costs occasioned by the default and averring that a new trial would not occasion a delay, or prejudice Mr. Lowe, or harm the children of the marriage. Although Mr. Lowe claimed that he would be harmed, he did not say how he would be harmed. Also, the motion for new trial was filed thirty-one days from the trial and twenty-eight days from the judgment. So, very little time had passed from the original trial date to the date of the filing of motion for new trial. In addition, the suit had been on file for only one and a half years. *See Martinez v. Valencia,* 824 S.W.2d 719, 724 (Tex. App.—El Paso 1992, no writ) (stating that defendant met third prong when the defendant, among other things, filed the motion for new trial within 30 days of judgment and judgment was entered four months after suit was filed).

We hold that Mrs. Lowe met the third prong of the *Craddock* test, and we sustain her second point of error that the trial court erred in overruling the motion for new trial.

Although we have found that Mrs. Lowe met the three prongs of the *Craddock* test, we feel obligated to note our reluctance to apply it to a suit affecting the parent-child relationship. We applied *Craddock* because, historically, that is what courts have done. But we do not think *Craddock* is an appropriate test for suits involving the parent-child relationship.

The most important reason *Craddock* is not appropriate in a suit affecting the parent-child relationship is because *Craddock* was designed to be applied to traditional civil litigation—personal injury, products liability, consumer, and commercial litigation—in which only two competing interests—the plaintiff's and the defendant's—are involved. In the normal civil setting, it makes sense to hold the defaulting party liable for his own or his agent's conscious indifference or for his failure to present a meritorious defense, because no other parties are impacted by it. But in suits involving the parent-child relationship, we have more than two interests involved, we have three interests: the mother's interests, the father's interests, and, of paramount importance, the child's interests. Under our family code, the ultimate question to ask is what is in the best interest of the child. *See* Tex. Fam.Code Ann. § 14.07 (Vernon 1986).[4] Yet, invariably, when the *Craddock* test is applied, it only takes into consideration the actions of the father and/or the mother, whichever happens to be the defaulting party. *Craddock* does not inquire into the child's interests and leaves no maneuvering room for a judge to consider the child's interests. Is it appropriate to remove a child from the primary care of one parent *solely* because that parent's lawyer did not do what he said he would do? We think not, although that could happen under the first prong of the *Craddock* test, and *did* happen in this case. Likewise, is it appropriate to consider the delay prong of *Craddock* without taking into account the child's best interest? Again,

4. For the current codification, see Tex. Fam.Code Ann. § 153.002 (Vernon 1996).

we think not.[5]

We also find that the second prong of *Craddock* does not neatly fit the family law area. Unlike other suits, where clear defenses and claims exist, in family law, we have only factors to be considered by the court in determining best interest. For example, the best that we could say in this appeal was that Mrs. Lowe raised some important factors that a court would want to consider in making a decision about custody: We cannot say absolutely—and rarely would an appellate court ever be able to say absolutely—that these factors would have changed the trial court's mind about custody. There is, in other words, no clear, meritorious defense in this area. Again, we note the comment contained in *Sampson & Tindall* that " 'best interest' is usually in the eye of the beholder." SAMPSON ET AL., *supra*, at 393. So, the meritorious defense prong also does not lend itself to being applied to custody cases.

Additionally, another reason exists for not applying *Craddock* in this context, the *Craddock* test assumes an adversarial relationship between the parties. And yet, our legislature has made great attempts to rid family law proceedings of an adversarial nature. Hence, petitions in a divorce are styled "In the Matter of the Marriage of _____ and _____." TEX. FAM.CODE ANN. § 3.51 (Vernon 1993) and, in a suit affecting the parent-child relationship, petitions are entitled "In the Interest of _____, a child." TEX. FAM.CODE ANN. § 11.08(a) (Vernon 1986).[6] In 1993, the "winner-loser" aspect of custody litigation between parents was eliminated with the deletion of the statement that

> "a parent appointed as sole managing conservator of the child retains all the rights, privileges, duties, and powers of a parent to the exclusion of the other parent, subject to the rights, duties, and powers of a possessory conservator . . . and, to any limitation imposed by Court order . . . ."

To replace this relatively harsh statement, the legislature substituted lists of rights of parents at all times and during possession,

and those exclusive to the managing conservator.

SAMPSON ET AL., *supra*, at 401 (citations omitted). Additionally, "[t]he author of the amendment, Senator Chris Harris, explains that the time when custody battles would end up with a 'winner' and a 'loser' was eliminated in the 1993 session, and that it is time to move on to a new attitude about the custody of children after divorce." *See id.* at 404. This statement explains why in the new family code, "[i]t is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM.CODE ANN. § 153.131(b) (Vernon Supp.1998). So, in the new code and the code in effect during the pendency of the Lowe's divorce, it was the legislature's desire that the proceedings lose their adversarial nature.

We also note that we are not the only court concluding the *Craddock* test is an inappropriate standard for suits involving the parent child relationship. In 1985, the Dallas Court of Appeals reversed and remanded a default judgment in a case where the appellant had failed to satisfy the third prong of the *Craddock* test. *See Little*, 705 S.W.2d at 154. In *Little*, the court determined the child's best interests would not be served by the original conservatorship. *See id.* So, it ruled public policy required the *Craddock* test to be relaxed "in child custody proceedings when the evidence strongly shows that the original custody order would have a seriously adverse effect on the interest and welfare of the child." *Id.*

Finally, one of the driving forces behind the *Craddock* test and our other default judgment rules is the desire for finality in judgments. But, in the family law arena, finality is not the ultimate goal. In family law, the trial court hearing the divorce/custody issues retains continuing jurisdiction over the family unit. *See* TEX. FAM.CODE ANN.

---

5. Nor did the Dallas Court of Appeals which reversed a default judgment in a suit affecting the parent child relationship, even though the third prong was not met. *See Little*, 705 S.W.2d at 153–54.

6. For the current codification, see TEX FAM CODE ANN. § 102.008 (Vernon 1996).

§ 11.05 (Vernon 1986).[7] In essence, the Code contemplates that substantive changes *will* occur in the decree and to the family unit. Nowhere else does our legal system contemplate that substantive changes to judgments will occur. *See, e.g.,* Tex.R. Civ. P. 316, 329(b). In short, although we have applied *Craddock* to this default judgment in a suit affecting the parent-child relationship, we would urge the Supreme Court to fashion a more workable rule or urge the family bar to propose a more appropriate rule to use in this type of suit.

In summary, we hold that the trial court abused its discretion in not granting Mrs. Lowe a new trial because she presented facts and allegations meeting the three prongs of *Craddock.* Therefore, we reverse the judgment of the court and remand for a new trial.

7. For the current codification, see Tex. Fam.Code Ann. §§ 155.001, 155.002, 155.003 (Vernon 1996).

APPENDIX

EXHIBIT "A".

| | 1. | *Set Motion to Examine Objections for Hearing. Aim for July 25, 1996.* |
|---|---|---|
| 07-12-1996 | 2. | Review Original Petition for Divorce to Determine if necessary to amend. Amend if necessary. |
| 07-15-1996 | 3. | Review and amend Answers to Interrogatories and Request for Production. |
| 07-15/07-16 | A. | Review same with Client. |
| 07-18-1996 | B. | Update and put in final form. |
| 07-15-1996 | 4. | Draft Motion for Contempt. |
| 07-15/07/16 | A. | Review same with Client |
| 07-18-1996 | B. | Update and put in final form. |
| 07-15-1996 | ·5. | Prepare Inventory and Appraisement. |
| 07-15/07/16 | A. | Review same with Client. |
| 07-18-1996 | B. | Update and put in final form. |
| 07-12-1996 | 6. | Contact Carolyn Holley about updated social study. |
| 07-19-1996 | 7. | Have Carolyn Holley prepare updated social study no later than... |
| 07-22/07-25 | 8. | Outline order of witnesses and testimony to be adduced. |
| 07-29/08-02 | 9. | Gather documents to be introduced and specify purpose of same. |
| 08-05/08-09 | 10. | Review with Client items 8 and 9 above. |
| 08-12/08-16 | 11. | Witness preparation. |
| 08-12/08-16 | 12. | Prepare charge. |