Reversed and Remanded and Memorandum Opinion filed March 3, 2009








Reversed
and Remanded and Memorandum Opinion filed March 3, 2009.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00311-CV

_______________

 

IN THE INTEREST OF K.A.C.O & J.C.C.O.

 

                                                                                                                                               


On Appeal from the 245th District Court

Harris County, Texas

Trial Court Cause No. 2003-07057

                                                                                                                                                

 

M E M O R A N D U M   O P I N I O N

This case involves a post-answer
default judgment and related rulings in a suit affecting the parent-child
relationship (SAPCR).  In seven issues, appellant Patrick J. Combe-Ovadia
contends the trial court abused its discretion by (1) failing to set aside the
default judgment entered against him and in favor of Amarit Gonzalez; (2)
striking his amended pleadings and jury demand; (3) modifying his periods of
possession of his two minor children; (4) issuing permanent injunctions; (5)
determining a risk of international child abduction existed and issuing related
precautionary orders; and (6) awarding attorney=s fees and conditioning his right of
appeal.  We reverse and remand for a new trial.

 








I.  BACKGROUND

On July 20, 2004, Patrick and Amarit
were divorced and appointed joint managing conservators of their two minor
children, K.A.C.O. and J.C.C.O.  The divorce decree designated Amarit as the
primary joint managing conservator with the exclusive right to establish the
children=s domicile and legal residence.  

On June 7, 2005, Amarit filed a
petition to modify the parent-child relationship.  In her petition, she alleged
that Patrick, who has dual American and French citizenship, exhibited behavior
demonstrating a high risk of international abduction and requested that the
court enter temporary orders for the children=s safety and welfare.  Patrick filed
an answer.  The trial court issued a scheduling order setting the case for
trial on July 10, 2006, at 10:00 a.m.  

On June 27, 2006, Amarit filed her
second amended petition seeking appointment as sole managing conservator and
modification of the parents= possessory rights and access to the children.  Due to a
vacation letter filed by Patrick=s counsel, the parties agreed to
re-set the trial date.  Amarit=s trial counsel filed a notice of trial setting advising the
parties that the trial had been re-set to November 13, 2006, at 10:00 a.m.

On October 12, 2006, Patrick filed a
jury demand.  On October 25, 2006, he filed a counter-petition to modify the
parent-child relationship in which he requested appointment as primary joint
managing conservator as well as other modifications.  Amarit filed a motion to
strike Patrick=s jury request.  Due to a death in her family, Patrick=s counsel filed a motion for
continuance of the trial setting.  On November 9, 2006, the associate judge
conducted a hearing at which he granted the motions to strike Patrick=s jury demand and for continuance. 
The trial was re-set for December 11, 2006.








On November 10, 2006, Patrick filed
his first amended counter-petition in which he added a jury demand and a
request for mediation.  Amarit was not served with the amended petition until
November 28, 2006.  On November 13, 2006, Patrick filed a notice of appeal from
the associate judge=s ruling striking his jury request.  Following a hearing, the
presiding judge placed the case on the court=s jury docket.  On December 1, 2006,
Amarit filed a motion to strike Patrick=s amended counter-petition.

On December 5, 2006, at 8:00 a.m., a
pre-trial conference was held.  Due to car trouble, Patrick=s counsel failed to appear and her
attempts to notify the court of her delay were unsuccessful.  At the
conference, Amarit re-urged her motion to strike Patrick=s jury request and requested that the
court strike Patrick=s amended counter-petition.  The trial court granted both
motions in orders signed on December 11, 2006.

A bench trial was held at 8:00 a.m.
on December 11, 2006.  Patrick and his counsel were not present.  Patrick
arrived at 8:40 a.m., but trial was already concluding.  At the conclusion of
trial, the court announced a default judgment (1) granting Amarit=s request to maintain the children=s American and French passports; (2)
prohibiting international travel with the children without first obtaining
court approval; (3) finding a risk of international abduction and granting
related injunctions; (4) issuing a standard possession order; (5) awarding
attorney=s fees to Amarit=s counsel; and (6) ordering Patrick
to deposit $10,000.00 to be held in trust for Amarit=s attorneys in the event he filed an
appeal.  Entry of judgment was set for December 15, 2006.

On December 13, 2006, Patrick filed a
motion to vacate and set aside the default judgment and to reinstate the case
on the jury docket for a new trial.  On December 15, 2006, the court held a
hearing at which it denied Patrick=s motion and signed the final default
judgment order.

II.  ANALYSIS

A.        Standard
of Review








The issues in this case are subject
to review under an abuse of discretion standard.  See Am. Flood Research,
Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006) (reviewing imposition of
sanctions for abuse of discretion); Mercedes-Benz Credit Corp. v. Rhyne,
925 S.W.2d 664, 666 (Tex. 1996) (reviewing denial of jury demand under abuse of
discretion standard); State Bar of Tex. v. Kilpatrick, 874 S.W.2d 656,
658 (Tex. 1994) (trial court=s decision to allow or deny trial amendment may be reversed
only upon showing of clear abuse of discretion); Cliff v. Huggins, 724
S.W.2d 778, 778-79 (Tex. 1987) (applying abuse of discretion standard to review
of denial of motion to set aside post-answer default judgment and for new
trial).  To determine whether a trial court abused its discretion, we must
decide whether it acted without reference to any guiding rules or principles;
in other words, whether the act was arbitrary or unreasonable.  Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) ; Swaab v. Swaab, No.
14-06-00593-CV, ___S.W.3d ___, 2008 WL 1838023, at *3 (Tex. App.CHouston [14th
Dist.] Apr. 24, 2008, no pet.).

B.        Default
Judgment

In his first issue, Patrick contends
the trial court abused its discretion in failing to set aside the final default
judgment entered against him.  He argues that the trial court erred in denying
his motion for new trial because he had no notice of the time the trial was set
to begin.

The seminal case
setting forth the elements of proof a defaulting party must show to obtain a
new trial following default judgment is Craddock v. Sunshine Bus
Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (Tex. 1939).  See also Estate
of Pollack v. McMurrey, 858 S.W.2d 388, 390 (1993); Lowe v. Lowe,
971 S.W.2d 720, 723 (Tex. App.CHouston [14th Dist.] 1998, pet. denied). 
Although Craddock was a no-answer default judgment, the Texas Supreme
Court has held that it applies equally to post-answer default judgments.  See
Lowe, 971 S.W.2d at 723 (citing LeBlanc v. LeBlanc, 778 S.W.2d 865,
865 (Tex. 1989) (per curiam)).  Under the Craddock test, a default
judgment should be set aside and a new trial ordered when the defaulting
defendant (1) shows that the failure to appear was not intentional or the
result of conscious indifference, but was due to an accident or mistake; (2)
sets up a meritorious defense; and (3) shows that a new trial would cause
neither delay nor work an injury to the plaintiff.  Craddock, 134 Tex.
at 393, 133 S.W.2d at 126.













This court has
expressed hesitance about applying the Craddock test to SAPCRs.  See
Martinez v. Martinez, 157 S.W.3d 467, 469-70 Tex. App.CHouston [14th
Dist.] 2004, no pet.)  (AAlthough the Craddock test has been
routinely applied to suits affecting the parent-child relationship (SAPCRs) by
appellate courts in Texas, this court has previously noted its discomfort in
doing so ....@) (citation omitted); Lowe, 971 S.W.2d at 725 (AAlthough we have
found that Mrs. Lowe met the three prongs of the Craddock test, we feel
obligated to note our reluctance to apply it to a suit affecting the
parent-child relationship.@).[1] 
Further, we are not the only court to question the appropriateness of using the
Craddock test for SAPCRs.  See, e.g., Rhamey v. Fielder,
203 S.W.3d 24, 29 (Tex. App.CSan Antonio 2006, no pet.) (urging Texas
Supreme Court to reconsider whether Craddock is appropriate standard in
context of SAPCR); Comanche Nation v. Fox, 128 S.W.3d 745, 750 (Tex.
App.CAustin 2004, no
pet.) (ACraddock does not fit well
into the context of a consideration of the best interests of the child.@); In re A.P.P.,
74 S.W.3d 570, 575 (Tex. App.CCorpus Christi 2002, no pet.) (finding
second prong of Craddock test difficult to apply in SAPCR where
primary issue before court is child=s best interest); see
also Dorrough v. Cantwell, No. 2-05-208-CV, 2006 WL 2034016, at * 6 (Tex.
App.CFort Worth July
20, 2006, pet. denied) ( per curiam) (mem. op., not designated for publication)
(noting reluctance of other courts in applying Craddock test in SAPCRs
given overriding consideration of best interest of child).  However, absent
contrary guidance from the supreme court, we remain bound to apply Craddock,
albeit liberally.  See Martinez, 157 S.W.3d at 470; Comanche, 128
S.W.3d at 750.

Under the first
prong of the Craddock test, the trial court was required to determine
whether Patrick=s failure to appear at trial was either
intentional or the result of conscious indifference on his part.  See
Craddock, 133 S.W.2d at 126; Martinez, 157 S.W.3d at 470.  In making
this determination, a court must look to the knowledge and acts of the
defendant.  See Martinez, 157 S.W.3d at 470.  If a defendant=s factual
assertions are not controverted by the plaintiff, the defendant satisfies his
burden if he has set forth facts which, if true, negate a finding of
intentional or conscious indifference.  See Dir., State Employees Workers= Comp. Div. v.
Evans, 889 S.W.2d 266, 269 (Tex. 1994).  The court reviews the entire record
in determining whether the defaulting party=s assertions are
controverted.  Id.

Notice of a trial
setting does not ordinarily appear in the transcript and need not affirmatively
appear in the record.  See Bruneio v. Bruneio, 890 S.W.2d 150, 155 (Tex.
App.CCorpus Christi
1994, no writ); see also Garcia v. Arbor Green Owners Ass=n, Inc., 838 S.W.2d 800,
803 (Tex. App.CHouston [1st Dist.] 1992, writ denied).  Rather, the
law presumes that a trial court will hear a case only after proper notice to
the parties.  Boateng v. Trailblazer Health Enters., L.L.C., 171 S.W.3d
481, 492 n.4 (Tex. App.CHouston [14th Dist.] 2005, pet. denied); Hanners
v. State Bar, 860 S.W.2d 903, 908 (Tex. App.CDallas 1993, writ
dism=d).  To rebut this
presumption, an appellant has the burden to affirmatively show a lack of notice
by affidavit or other competent evidence.  Jones v. Tex. Dep=t of Pub. Safety, 803 S.W.2d 760,
761 (Tex. App.CHouston [14th Dist.] 1991, no writ). 








In his motion for
new trial, Patrick asserted that his failure to timely appear at trial
was not intentional but rather because he had no notice of the 8:00 a.m.
setting on December 11.  In support of his motion, Patrick attached his
affidavit which established the following facts.  His lawyer advised him that
the trial was scheduled to begin at 10:00 a.m. on December 11.  He spent most
of the Friday preceding trial with his counsel and witnesses to prepare for
trial on Monday.  He had arranged for witnesses to come from France and Belgium
to testify at the trial.  Patrick and one of his witnesses, David Martin, arrived
in the courtroom at approximately 8:40 a.m. on December 11.  In Martin=s affidavit, also
attached to the motion, Martin stated he was told by Patrick=s attorney that
trial would begin on December 11, 2006, at 10:00 a.m.  In addition to the
affidavits, Patrick attached copies of three subpoenas instructing witnesses to
appear in the courtroom on December 11, 2006, at 10:00 a.m.

At the December 15
hearing, Patrick testified that he believed the trial was scheduled to begin at
10:00 a.m. on December 11 based on his attorney=s representation. 
Patrick=s counsel also
testified that, at the November 9 hearing, the associate judge had advised her
off the record that the trial would begin at 10:00 a.m. on December 11.  She
further testified that, following that hearing, she never received written or
oral notice that the trial was set to begin at 8:00 a.m. on December 11.

Amarit did not
file a written response to Patrick=s motion to vacate
or otherwise controvert his factual assertions in the trial court.  On appeal,
she contends the trial court properly concluded that Patrick had notice of the
8:00 a.m. trial setting based upon the following: (1) the docket sheet; (2) the
judge=s statements
during the November 28 hearing; (3) the judge=s statements
during the December 15 hearing on Patrick=s motion for new
trial; and (4) the fact that she, her attorney, her witnesses, the judge, and
the court coordinator were present at 8:00 a.m.








The docket sheet
in this case reflects the following notation for November 28, 2006: AJury trial
12-11-06 @ 8am - be prepared.@  However, Amarit=s reliance on the
court=s docket sheet is
misplaced.  In general, a docket entry forms no part of the record that may be
considered on appeal; instead, it is merely a memorandum made for the
convenience of the clerk and the trial court.  See Rush v. Barrios, 56
S.W.3d 88, 95 (Tex. App.CHouston [14th Dist.] 2001, pet. denied); Guyot
v. Guyot, 3 S.W.3d 243, 246 (Tex. App.CFort Worth 1999,
no pet.).  One reason for not considering docket entries on appeal is that they
are inherently unreliable.  See Daniel v. Falcon Interest Realty Corp.,
190 S.W.3d 177, 188 (Tex. App.CHouston [1st Dist.] 2005, no pet.); Guyot,
3 S.W.3d at 246. 

Amarit also
asserts that the judge notified the parties of the 8:00 a.m. start time during
the November 28 hearing on Patrick=s appeal from the
associate judge=s ruling granting Amarit=s motion to strike
his jury demand.  However, a review of the hearing transcript reveals no
mention of the trial start time.  Instead, after being informed by counsel that
the case was set for December 11, the judge responded, AGive me a few
minutes and I=ll get back to all of you,@ after which the
hearing concluded.  Amarit asserts that because the docket sheet reflects an
8:00 a.m. start time, A[i]t can be inferred that in open court []
Judge Kuntz announced the trial date and time on November 28, 2006, in the
presence of both counsel.@  As previously discussed, Amarit=s reliance on the
docket sheet to prove Patrick had notice of the trial setting is without
merit.  See Rush, 56 S.W.3d at 95; Guyot, 3 S.W.3d at 246.

Next, Amarit
argues that the trial court=s conclusion that Patrick had proper
notice is supported by the judge=s statements
during the December 15 hearing on Patrick=s motion for new
trial.  After denying a request by Patrick=s counsel to
solicit testimony from Amarit=s attorney on the issue of notice, the
trial court stated as follows:

THE COURT:          And this court from the bench announced that there
would be pretrial, that I would give you your jury trial, but we will have a
pretrial because this court=s pretrial procedures for trial is very
strenuous because we don=t bring juries over here until we=re ready for trial
and every pretrial would be at 8:00 o=clock.  We would
go to trial as scheduled on the 11th starting at 8:00 o=clock because we
call the jury at 8:00 o=clock.  The jury=s called at 8:00 o=clock.  Every
trial in this court and from the bench that day, it was announced at 8:00 o=clock.








We find Amarit=s argument
unavailing for several reasons.  First, a trial court applying the Craddock standard
must review the record to determine whether a defaulting party=s assertions are
controverted.  The above statements did not form part of the record before the
trial court; rather, they reflect the court=s disagreement
with Patrick=s assertion that he had not received notice of the
8:00 a.m. start time.  Second, it is the plaintiff who must
controvert the defendant=s factual assertions.  Patrick has
provided an excuse and Amarit did not factually controvert this excuse in the
record.  See Fid. & Guar. Ins. Co. v. Drewery Constr. Co., 186 S.W.3d
571, 576 (Tex . 2006) (per curiam) (where plaintiff did not controvert
defendant=s affidavits setting forth excuse for losing lawsuit
service papers, trial court was not at liberty to disregard it).  If a
defendant=s factual assertions are not controverted by the
plaintiff, the defendant satisfies his burden if he has set forth facts which,
if true, negate a finding of intentional or conscious indifference.  See Evans,
889 S.W.2d at 269.  Third, in determining whether a defendant has satisfied the
first prong, a court must look to the knowledge and acts of the defendant.  See
Martinez, 157 S.W.3d at 470. A[T]he Craddock standard
is one of intentional or conscious indifferenceCthat the defendant
knew it was sued but did not care.@  Fid. &
Guar. Ins. Co., 186 S.W.3d at 575-76.  In his affidavit, Patrick stated
that he did not know that the trial was set to begin at 8:00 a.m.; had spent
most of the preceding Friday with his counsel and witnesses to prepare for
trial on Monday; had arranged for witnesses to come from France and Belgium to
testify at the trial; and had arrived in the courtroom with Martin at 8:40
a.m.  This evidenceCuncontroverted by AmaritCdoes not
demonstrate intentional or conscious indifference.  








Finally, Amarit
argues that Patrick had notice of the trial setting because everyone else
involved with the trial was present at 8:00 a.m.  We decline to indulge such a
presumption.  Further, Amarit cites no authority to support this proposition,
nor are we aware of any.  In any case, Amarit failed to raise this argument in
a response to Patrick=s motion or controvert it in an affidavit
and, thus, it was not part of the record before the trial court.

We note that a
defaulting party must provide some excuse, though not necessarily a good
excuse, for failing to appear.  Fox, 128 S.W.3d at 750; McClure v.
Landis, 959 S.W.2d 679, 681 (Tex. App.CAustin 1997, pet.
denied).  We need not evaluate the veracity of Patrick=s excuse; rather,
a Aslight excuse@ often will
suffice to set aside a default judgment.  See Fox, 128 S.W.3d at 750. 
Liberally construing Craddock in this SAPCR, and in light of the fact
that Amarit did not factually controvert his excuse, we conclude that Patrick
has satisfied Craddock=s first element.

As to the second Craddock
element, Amarit argues that Patrick failed to set up a meritorious defense. 
However, we need not consider whether Patrick has satisfied this element
because when a defaulting defendant shows that he was not given notice of a
trial setting, the party is relieved of his burden to show a meritorious
defense.  See Mathis v. Lockwood, 166 S.W.3d 743, 744 (Tex. 2005); see
also Garcia v. Vera, No. 01-05-01161-CV, 2006 WL 2865033, at *4 (Tex. App. C Houston [1st
Dist.] Oct. 5, 2006, no pet.) (mem. op., not designated for publication). 
Patrick alleges in his motion for new trial that he did not receive notice of
the 8:00 a.m. setting.  At the December 15 hearing, his trial counsel testified
that she never received written or oral notice that the trial was to begin at
8:00 a.m. on December 11.  Amarit did not controvert Patrick=s factual
allegations in the record.  We conclude that Patrick need not show the second
prong of Craddock.

Similarly, Patrick
is not required to satisfy Craddock=s third prong. 
Where a party did not receive notice of a trial setting, courts dispense with
the burden to show that a motion for new trial would not cause delay or injury
to the plaintiff.  See Garcia, 2006 WL 2865033, at *4; Mahand v.
Delaney, 60 S.W.3d 371, 375 (Tex. App.CHouston [1st
Dist.] 2001, no pet.).  

We conclude that
Patrick met the requirements of Craddock and that the trial court erred
in overruling his motion for new trial.  We sustain his first issue.








C.      Striking Patrick=s Amended Pleading

In his second
issue, Patrick contends the trial court abused its discretion by striking his
amended counter-petition.  His argument is two-fold.  First, he argues that
Amarit failed to demonstrate surprise as required by Texas Rule of Civil
Procedure 63.  Second, to the extent the trial court struck his amended
pleading as a sanction for his counsel=s failure to
appear at the pre-trial conference, he contends the sanction was neither
appropriate nor just.

1.       Texas Rule of Civil Procedure 63

When no pre-trial
order is in place, a party has a right to amend its pleadings up to seven days
before trial as long as the amendment does not operate as a surprise to the
opposing party.  See Tex. R. Civ.
P. 63; Kilpatrick, 874 S.W.2d at 658.  A judge may not refuse a trial
amendment unless (1) the opposing party presents evidence of surprise or
prejudice, or (2) the amendment asserts a new cause of action or defense and is
thus prejudicial on its face.  Kilpatrick, 874 S.W.2d at 658 (citing Greenhalgh
v. Serv. Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990)); Flo Trend Sys.,
Inc. v. Allwaste, Inc., 948 S.W.2d 4, 7 (Tex. App.CHouston [14th
Dist.] 1997, no writ).

On October 25,
2006, Patrick filed a counter-petition
seeking to be appointed the children=s primary joint managing conservator.  After the trial
was re-set to December 11, 2006, Patrick filed a first amended counter-petition
on November 10, 2006, in which he requested a jury and mediation.  Amarit filed
a motion to strike the amended pleading.  On December 5, 2006, at 8:00 a.m.,
the court conducted a pre-trial conference during which Amarit=s motion to strike
was considered.  Due to car trouble, Patrick=s counsel failed to appear at the hearing and her attempts to
notify the court of her delay were unsuccessful.  The court granted Amarit=s motion.








In her motion to
strike, Amarit objected to being served with Patrick=s amended
counter-petition less than two weeks before trial because her answer would not
be due by the trial date and the case had been on file since June 2005.  In
support of the motion, Amarit=s counsel stated at the pre-trial
conference, A[w]e feel that it was untimely....  We feel that they filed frivolously a
motion for custody less than two weeks before trial and there is just no reason
to do that other than to harass my client and to run up attorney=s fees.@[2]  This does not constitute evidence
of surprise.  Moreover, the only substantive differences between the original
and amended pleadings are the inclusion of Patrick=s jury demandCwhich previously was filed on October
12, 2006Cand a request for mediation.  Such
amendments do not operate as a surprise. 

2.         Sanctions      

Patrick also contends that the trial
court=s order striking his amended pleading
appears to be a sanction against him for his counsel=s failure to appear at the pre-trial
conference.  He argues that such a sanction was neither just nor reasonable.

At the December 5, 2006 hearing, the
trial judge asked her staff whether anyone had heard from Patrick or his
counsel.  After being told they had not, the judge stated,

THE COURT:            No
contact has been made with the Court [sic] whatever.  The Court having
considered the fact that the other side was requesting this jury, the Court has
arranged to give them their jury, having stressed the importance of the
pretrial in getting ready for a jury, it=s not too late to impanel that jury
once we bring them over and them not appearing and it=s after 8:15 and we have not heard
from them, the Court will grant your motion to strike their pleadings, their
first amended counterpetition and also, to strike their request for the jury
trial and we will proceed as scheduled to trial on Monday, nonjury.








We agree with Patrick that the court=s decision to strike his amended
counter-petition appears to be in the nature of a sanction.

Texas Rule of Civil Procedure 166
permits trial courts to hold pre-trial conferences and to enter orders
establishing agreements of the parties as to any of the matters considered
which control the subsequent course of the case up to trial.  Tex. R. CIV. P. 166.  The trial court
has power, implicit under Rule 166, to sanction a party for failing to obey its
pre-trial orders.  Koslow=s v. Mackie, 796 S.W.2d 700, 703 (Tex. 1990); Taylor
v. Taylor, 254 S.W.3d 527, 532 (Tex. App.CHouston [1st Dist.] 2008, no pet.). 
We review a trial court=s imposition of sanctions under an abuse of discretion
standard.  See Koslow=s, 796 S.W.2d at 704.  In conducting our analysis, we
recognize that the trial court=s discretion in imposing sanctions is governed by the
standards set out in TransAmerican Natural Gas Corp. v. Powell, 811
S.W.2d 913 (Tex. 1991).  See Taylor, 254 S.W.3d at 532 (concluding TransAmerican
standard applies to sanctions imposed for violating pre-trial order); Wal-Mart
Stores, Inc. v. Butler, 41 S.W.3d 816, 817-18 (Tex. App.CDallas 2001, no pet.) (applying TransAmerican
standard to sanctions imposed for violation of pre-trial order).








In TransAmerican, the supreme
court developed a two-part test for courts to apply when determining whether a
sanction is just.  811 S.W.2d at 917.  First, there must be a direct
relationship among the offensive conduct, the offender, and the sanction
imposed. Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003) (citing TransAmerican,
811 S.W.2d at 917).  A just sanction must be directed against the abuse and
tailored to remedy any prejudice caused to the innocent party, and the sanction
should be imposed upon the offender.  Id.  Second, just sanctions must
not be excessive.  TransAmerican, 811 S.W.2d at 917; Taylor, 254
S.W.2d at 533.  In other words, a sanction imposed should be no more severe
than necessary to satisfy its legitimate purposes, which include securing
compliance with discovery rules, deterring other litigants from similar
misconduct, and punishing violators.  Taylor, 254 S.W.2d at 533.  For
this reason, courts must be certain that less stringent sanctions would not
have sufficed to fully promote compliance. TransAmerican, 811 S.W.2d at
917; Taylor, 254 S.W.2d at 533.

We first consider whether the
sanction imposed here was directly related to the abusive conduct.  Patrick and
his counsel do not dispute that they were aware of the pre-trial conference. 
The record reflects that Patrick=s counsel experienced car trouble on
her way to the hearing and that she attempted to contact the court beginning at
approximately 7:30 a.m.  She left a message on the court coordinator=s voice mail system at 8:01 a.m. to
advise of her delay, and her husband left a similar message on her behalf at
8:20 a.m.  She arrived at the courtroom between 8:45 a.m. and 9:00 a.m., after
the hearing had concluded.  She asked the clerk and the coordinator whether her
messages had been received.  The coordinator checked her messages and played
them aloud.  After advising the judge of counsel=s arrival, the coordinator returned
and relayed a message from the judge to Patrick=s counsel.[3] 
Patrick=s counsel ordered a copy of the
hearing transcript from the court reporter, filed two motions, and spoke with
the coordinator regarding the procedure for obtaining a copy of the voice mail
messages.  Nothing in the record indicates that counsel=s failure to appear at the pre-trial
conference was due to any lack of diligence on her part.  More importantly, her
failure to appear was in no way attributable to Patrick.








We next consider whether the sanction
was excessive.  Nothing in the record indicates that the trial judge considered
lesser sanctions or that lesser sanctions would not have been effective.  See
Taylor, 254 S.W.3d at 533; In re Bledsoe, 41 S.W.3d 807, 814 (Tex.
App.CFort Worth 2001, orig. proceeding). 
Nor did the court=s scheduling order warn Patrick that his counsel=s failure to timely appear at the
hearing could result in sanctions against him.  See In re Bledsoe, 41
S.W.3d at 814 (noting trial court=s docket control order did not warn
party that non-compliance with order would result in imposition of sanctions
striking his pre-trial pleadings).  Further, the order striking Patrick=s amended pleading was not supported
by a motion for sanctions or the court=s invocation of its own power to
sanction, and Patrick had no opportunity to be heard on the issue.  The record
also does not reflect any past conduct by Patrick that would warrant the
imposition of such a harsh sanction.  We are unaware of any evidence that
Patrick or his counsel engaged in any type of bad faith conduct, abused the
discovery process, or otherwise failed to comply with the trial court=s orders prior to the pre-trial
conference.  See Taylor, 254 S.W.3d at 534.

We conclude that to the extent the
court=s order was intended as a sanction,
such a sanction fails under both TransAmerican prongs.  Accordingly, we
conclude the trial court abused its discretion by striking Patrick=s amended counter-petition.  We
sustain his second issue.

D.        Striking
Patrick=s Jury Demand

In his third issue, Patrick contends
the trial court abused its discretion by striking his jury demand as a sanction
for his counsel=s failure to appear at the pre-trial conference.

As previously noted, after the
associate judge initially granted Amarit=s motion to strike Patrick=s jury demand, the presiding judge
placed the case on the jury docket.  However, at the December 5, 2006 pre-trial
conference, Amarit re-urged her motion to strike.  The trial judge granted the
motion and struck Patrick=s jury demand.

A request for a jury trial made more
than 30 days in advance of trial is presumed to be reasonable.  Halsell v.
Dehoyos, 810 S.W.2d 371, 371 (Tex. 1991) (per curiam).  A party opposing
the request may rebut the presumption by showing that a jury trial will (1)
injure the party; (2) disrupt the trial court=s docket; or (3) impede the ordinary
handling of the court=s business.  Id.  Patrick=s jury demand was filed 31 days
before the November 13, 2006 trial setting and, thus, is presumed to be
reasonable.  Amarit did not establish the existence of any of the foregoing
factors in her motion to strike or at the pre-trial conference; rather, her
counsel asserted that the jury demand was Aunfair surprise@ and A[w]e don=t feel a jury is necessary.@  Thus, Amarit failed to rebut the
presumption of reasonableness.








Moreover, in light of the judge=s statements at the pre-trial
conference, we are persuaded that she struck Patrick=s jury demand as a sanction for his
counsel=s failure to appear at the hearing. 
As with the striking of his amended pleading, we likewise find this sanction to
be neither just nor reasonable under the TransAmerican standard.  The
sanction imposed was not directly related to the offensive conduct.  We find no
evidence that counsel=s failure to appear at the pre-trial conference was due to
any lack of diligence on her part or in any way attributable to Patrick. 
Moreover, nothing in the record suggests that the trial judge considered lesser
sanctions or that lesser sanctions would not have been sufficient.

In her brief, Amarit argues that even
if the trial court erred in striking Patrick=s jury demand, any error was harmless
because there remained no claims upon which Patrick was entitled to a jury
trial.  Under the Texas Family Code, a party is entitled to a jury verdict on
the issues of appointment of a sole managing conservator and joint managing
conservators, and the determination of which joint managing conservator has the
exclusive right to designate the primary residence of the child.  Tex. Fam. Code Ann. ' 105.002(c) (Vernon  2009).  In
support of her position, Amarit relies on the fact that she abandoned her
request to be sole managing conservator at the conclusion of the pre-trial
conference, and that the court struck Patrick=s amended counter-petition in which
he requested to be appointed primary joint managing conservator.

Amarit=s contention is without merit. 
Although it is true that Amarit abandoned her request for sole managing
conservatorship, she agreed to do so only if the case was tried to the bench
rather than a jury.  Thus, if the court had not erroneously struck Patrick=s jury demand, it appears that Amarit
would not have abandoned her request.  In addition, although the court struck
Patrick=s amended counter-petition, his
original counter-petitionCin which he sought primary parent statusCremained a viable pleading at the
time of trial.








Amarit also contends that any error
in striking Patrick=s jury request was harmless because Patrick waived his right
to a jury by his failure to appear at trial.  See Tex. R. Civ. P.  220 (AFailure of a party to appear for
trial shall be deemed a waiver by him of the right to trial by jury.@).  Her argument is misplaced. 
Although it is undisputed that Patrick and his counsel did not appear at trial,
the trial court struck Patrick=s jury request at the pre-trial conferenceCsix days before trial.

We conclude the trial court abused
its discretion by striking Patrick=s jury demand.  His third issue is
sustained.[4]

III.  CONCLUSION

We hold the trial court abused its
discretion in failing to set aside the default judgment and in overruling
Patrick=s motion for new trial because he
satisfied the requirements of Craddock.  We further hold the trial court
abused its discretion in striking Patrick=s amended counter-petition and jury
demand.  Accordingly, we reverse the judgment of the trial court, order that
the case be reinstated on the trial court=s jury docket, and remand for a new
trial.

 

                                                                                    

/s/        William J. Boyce

Justice

 

 

 

Panel consists of Justices Yates,
Seymore, and Boyce.









[1]           In Lowe, this court articulated
several reasons why Craddock is not an appropriate test for suits
involving the parent-child relationship.  See Lowe, 971 S.W.2d at
725-27.  First, Craddock was designed to be applied to traditional
civil litigationCpersonal injury, products liability, consumer, and
commercial litigationCin which only two competing interestsCthe plaintiff=s
and the defendant=sCare involved.  See
id. at 725.  By contrast, in suits involving the parent-child
relationship, there are three interests involvedCthe mother=s, the father=s
and, of paramount importance, the child=s. 
See id. (ACraddock does
not inquire into the child=s interests and
leaves no maneuvering room for a judge to consider the child=s interests.@). 
Further, Craddock=s second prong does not easily lend itself to the
family law area.  Id. at 726.  Unlike other suits in which clear
defenses and claims exist, in family law there are only factors to be
considered by the court in determining best interest.  Id. Third,
whereas the Craddock test assumes an adversarial relationship
between the parties, our legislature has made great attempts to rid family law
proceedings of an adversarial nature (e.g., styling petitions in SAPCRs
as AIn the Interest of _______, a child@).  Id.  Finally, one of the main goals behind
the Craddock test, as with other default judgment rules, is the desire
for finality in judgment.  Id.  However, in family law, the trial court
hearing the issues in a SAPCR retains continuing jurisdiction because the
Family Code contemplates that substantive changes will occur in the
decree and to the family unit.  See id. at 726-27.





[2]           Contrary to Amarit=s contention, Patrick=s original counter-petition was filed 18 days before the second trial
setting on November 13, 2006.  After a motion for continuance was granted, the
trial was re-set for December 11, 2006.





[3]           The record does not reflect the substance
of the message.  





[4]           Because of our disposition of Patrick=s first issue, we need not address issues four through
seven.