

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00197-CV

AARON CHRISTOPHER BITTER                                    APPELLANT

V.

COMMISSION FOR LAWYER                                          APPELLEE
DISCIPLINE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

### NO. 02-12-00198-CV

AARON CHRISTOPHER BITTER                                    APPELLANT

V.

COMMISSION FOR LAWYER                                          APPELLEE
DISCIPLINE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

**NO. 02-12-00199-CV**

AARON CHRISTOPHER BITTER                                    APPELLANT

V.

COMMISSION FOR LAWYER                                         APPELLEE
DISCIPLINE

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

**MEMORANDUM OPINION**[1]

----------

This consolidated appeal arises from two default judgments of suspension and a default judgment of disbarment rendered against Appellant Aaron Christopher Bitter in three disciplinary actions brought against him by Appellee the Commission for Lawyer Discipline. Bitter complains in three issues about the trial court's denial of his motions for new trial, the denial of his motion to recuse the judge assigned to hear the disciplinary actions, and the sanctions rendered against him in one of the actions. Because we hold that Bitter did not show his entitlement to new trials or to have the assigned judge removed from the case and that the trial court's sanctions were supported by the record, we affirm.

---

[1]See Tex. R. App. P. 47.4.

On September 6, 2011, the Commission filed three disciplinary actions against Bitter in Denton County. Cause number 2011-50731-367 concerned Bitter's representation of clients Cindy Hasio and Alba Argueta. In that case, the Commission alleged that Bitter had failed to respond to Hasio's requests for information regarding the status of her case and failed to provide any meaningful legal services. The Commission further alleged that Bitter had failed to respond to Argueta's reasonable requests for information regarding the status of her case, had failed to provide any meaningful legal services on Argueta's behalf, and had closed his law office and changed his contact information without any notice to Argueta.

Cause number 2011-40731-362 concerned Bitter's representation of Renee Michelle Spencer. The Commission alleged that Billy Bardwell gave Bitter permission to charge his credit card account for a $750 initial payment of attorney's fees on Spencer's behalf and that "[t]hereafter, without notice to Bardwell or his permission, [Bitter] charged to Bardwell's credit card account $1,000 on December 10, 2009; $750 on January 24, 2010; and $1,000 on February 2, 2010."

Cause number 2011-10732-16 concerned Bitter's representation of Krissy Burke and Melissa Noriega. The Commission alleged that Bitter had failed to respond to Noriega's reasonable requests for information regarding the status of her case, had failed to explain the matter to the extent reasonably necessary to permit Noriega to make informed decisions regarding the representation, had

3

failed to appear for scheduled appointments, and had failed to appear at a hearing on temporary orders. With respect to Burke, the Commission alleged that Bitter had failed to respond to Burke's requests for information regarding the status of her case, informed her that he had provided certain legal services that had not been done, had failed to appear for scheduled appointments with Burke, had failed to inform Burke that he had moved his office and that his contact information had changed, and, after Burke fired Bitter, had failed to provide an accounting and a refund.

Around the same time that the Commission filed the three disciplinary actions against Bitter, Bitter was defending a criminal case against him in Denton County. He also had two other grievance matters against him in Denton County—cause number 2011-20417-158 in the 158th District Court and case number D0060937626 before an evidentiary panel of the District 14 Grievance Committee—neither of which is a part of this appeal.

The Supreme Court of Texas assigned Judge Jack Skeen Jr. to preside over the three disciplinary actions giving rise to this appeal. On February 21, 2012, the Commission moved for a no-answer default judgment in each of the three cases. The Commission also asked for sanctions and for a hearing on its request for sanctions. On the same date, the trial court held a hearing at which the court found Bitter guilty of professional misconduct and granted default judgment against Bitter in each of the three cases. The court then heard testimony from Hasio, Burke, and Noriega on the sanctions issue.

4

On the same date, the trial court signed a default judgment of active suspension in cause numbers 2011-50731-367 and 2011-10732-16, suspending Bitter from the practice of law for four years. In the judgment in cause number 2011-50731-367, the trial court assessed sanctions against Bitter, ordering him to pay $600 restitution to Hasio and $1,895.51 in attorney's fees to the State Bar of Texas. The judgment in 2011-10732-16 ordered Bitter to pay $2,700 restitution to Burke; $2,500 restitution to Noriega; and $1,895.51 in attorney's fees to the State Bar. In cause 2011-40731-362, the trial court signed a default judgment of disbarment and ordered Bitter to pay $1,895.51 in attorney's fees as a sanction.

Bitter filed pro se motions to set aside the default judgments, each supported by an affidavit asserting that his failure to file an answer in each case was not intentional or the result of conscious indifference. Bitter asserted that on September 16, 2011, he had hired attorney Stephen Wohr to represent him in the three disciplinary cases. Bitter stated that he believed that Wohr would file an answer in each of the disciplinary actions. He also claimed that he had a meritorious defense in each case and that new trials would not cause delay.

The Commission filed responses to Bitter's motions, attaching to each an affidavit from Wohr controverting the assertions in Bitter's motions and affidavits with respect to Bitter's failure to answer. The Commission's responses also asserted that Bitter had not set up a meritorious defense in any of the motions

5

because the motions were not supported by affidavit or other evidence on the defenses asserted.

Each of Bitter's motions had attached to it a request for a hearing on his motions. Bitter subsequently retained an attorney to represent him and filed an objection to the assignment of Judge Skeen. The motion asserted that Judge Skeen's court coordinator had notified Bitter that Judge Skeen was in a murder trial and unavailable to hear Bitter's motions for new trial. Judge Skeen overruled the objection. The order overruling the objection listed the dates that Judge Skeen had been unavailable due to jury selection in the murder trial and noted what date the following month that the trial was scheduled to start. Nothing in the record shows any further effort to set the motions for a hearing, and the motions were overruled by operation of law. Bitter then filed this consolidated appeal.

In Bitter's first issue, he argues that the trial court abused its discretion by not setting his motions for new trial for a hearing and by not granting new trials after Bitter established all three prongs of the *Craddock* test.[2] Under *Craddock*, a trial court must set aside a default judgment if (1) "the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident"; (2) "the motion for a new trial sets up a meritorious defense"; and (3) granting the motion "will

---

[2]*Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (Tex. 1939).

6

occasion no delay or otherwise work an injury to the plaintiff."[3]  We review a trial court's ruling on a motion for new trial for an abuse of discretion.[4]  When a movant meets all three elements of the *Craddock* test, the trial court abuses its discretion if it does not grant a new trial.[5]

The term "conscious indifference" as used in the first prong of *Craddock* refers to "the failure to take some action that would appear obvious to a reasonable person under similar circumstances."[6]  When the movant's factual assertions with respect to the first prong are not controverted, the trial court must determine the question of conscious indifference in the same way that the question of a meritorious defense must be determined.[7]  That means that (1) the trial court must take the *uncontroverted* assertions in a defendant's verified motion and affidavit as true, and (2) the movant satisfies the first prong of

---

[3]*Sutherland v. Spencer*, 376 S.W.3d 752, 754 (Tex. 2012) (citing *Craddock* 133 S.W.2d at 126).

[4]*Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994).

[5]*Id.*

[6]*In re C.M.D.*, No. 02-12-00237-CV, 2012 WL 5949506, at *2 (Tex. App.—Fort Worth Nov. 29, 2012, no pet.) (mem. op.) (citing *Prince v. Prince*, 912 S.W.2d 367, 370 (Tex. App.—Houston [14th Dist.] 1995, no writ)).

[7]*Evans*, 889 S.W.2d at 268; *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex. 1984).

*Craddock* if those assertions, taken as true, would negate intentional or consciously indifferent conduct.[8]

Case law is not entirely in accord about when a movant's assertions on conscious indifference must be taken as true and under what circumstances a trial court must hold an evidentiary hearing on the question of whether the defendant's failure to answer was intentional or the result of conscious indifference.[9] Although cases on the question have reached different conclusions, depending on whether the assertions in the defendant's motion and supporting evidence satisfy the first *Craddock* element, whether those assertions are controverted, and whether a hearing is requested, we can discern the following general rules. The trial court looks to the entire record to see if the defendant's assertions regarding conscious indifference are controverted.[10] If anything in the record (including any evidence submitted by the plaintiff in

---

[8] *Sutherland*, 376 S.W.3d at 754–55; *Strackbein*, 671 S.W.2d at 38–39.

[9] *Compare Healy v. Wick Bldg. Sys., Inc.*, 560 S.W.2d 713, 721 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.) (op. on reh'g) (observing that the trial court did not hold an evidentiary hearing even though the facts were disputed and holding that under the circumstances, "a court cannot make findings of fact solely from the record on file without hearing evidence" and that in such a case, "the court is bound to accept as true the affidavits of the movant unless his opponent requests an evidentiary hearing"), *with Katin Corp. v. Loesch*, No. 03-05-00412-CV, 2007 WL 2274835, at *6 (Tex. App.—Austin Aug. 10, 2007, pet. denied) (mem. op.) ("[C]ontroverted assertions related to a defendant's excuse for its default need not be taken as true, even if the plaintiff does not request an evidentiary hearing.").

[10] *Evans*, 889 S.W.2d at 269.

response to the motion for new trial) controverts the assertions on conscious indifference, the trial court need not take the movant's assertions as true and should hold an evidentiary hearing to resolve the fact questions raised.[11] If the defendant's motion and supporting evidence meet the *Craddock* test and nothing in the record otherwise controverts the defendant's assertions, a plaintiff may request an evidentiary hearing to refute the defendant's assertions.[12] But if no hearing is requested or held, or if the record does not controvert the assertions on conscious indifference that are made in the defendant's sworn pleadings or supporting evidence, the trial court must take those assertions as true.[13] But

---

[11] *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 392 (Tex. 1993) ("The trial court generally may not resolve disputed fact issues regarding intent or conscious indifference on affidavits alone."); *see also Hensley v. Salinas*, 583 S.W.2d 617, 618–19 (Tex. 1979) ("[W]hen a motion presents a question of fact upon which evidence must be heard, the trial court is obligated to hear such evidence when the Motion for New Trial alleges facts, which if true, would entitle the movant to a new trial and when a hearing for such purpose is properly requested.").

[12] *See Healy*, 560 S.W.2d at 721; *see also Averitt v. Bruton Paint & Floor Co.*, 773 S.W.2d 574, 576 (Tex. App.—Dallas 1989, no writ).

[13] *See Van Der Veken v. Joffrion*, 740 S.W.2d 28, 31 (Tex. App.—Texarkana 1987, no pet.) ("[W]hen the movant properly raises his points by sworn pleadings or affidavit and requests a hearing, as in the present case, and no evidentiary hearing is held, the court is bound to accept the sworn pleadings or affidavit of the movant as being true."); *Healy*, 560 S.W.2d at 721 (stating that trial court had to take the defendant's assertions as true because the plaintiff opponent did not request an evidentiary hearing); *see also Fid. & Guar. Ins. Co. v. Drewery Const. Co.*, 186 S.W.3d 571, 576 (Tex. 2006) (when the movant's evidence is uncontroverted, the trial court may not disregard it.). *But see Katin Corp.*, 2007 WL 2274835, at *6 (stating that the movant's assertions must be taken as true *only* if they are not controverted, regardless of whether the plaintiff requested an evidentiary hearing).

before a trial court examines the record to see if the defendant's assertions are controverted, the defendant's motion and supporting affidavit must meet the first prong of *Craddock* and show a lack of intentional or consciously indifferent conduct.[14]

Generally, when a party relies on an attorney to file an answer, the party must establish that the failure to answer was not intentional or the result of conscious indifference of *either* the party *or* the attorney.[15]  The acts of an attorney can demonstrate or negate conscious indifference, depending on the facts of the case.[16]

Bitter's motions for new trial were essentially identical with respect to the first *Craddock* prong.  In the motions, he asserted that he had retained Wohr to represent him in the case, paying him a retainer fee of $2,000 and a later

---

[14]*See Evans*, 889 S.W.2d at 269 ("If the factual assertions in the defendant's affidavit are not controverted by the plaintiff, the defendant satisfies his burden *if* his affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant.") (emphasis added); *see also Rabie v. Sonitrol of Houston, Inc.*, 982 S.W.2d 194, 196 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("If the movant's allegations are uncontroverted *and meet the test of the* Craddock *requirements*, the court is compelled to grant the motion") (emphasis added).

[15]*McMurrey*, 858 S.W.2d at 391; *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

[16]*See Dodd v. Savino*, No. 14-12-00555-CV, 2014 WL 242881, at *9–10 (Tex. App.—Houston [14th Dist.] Jan. 16, 2014, no. pet. h.) (op. on reh'g); *C.M.D.*, 2012 WL 5949506, at *2; *see also Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 169 (Tex. 2008) (upholding default judgment when parties' attorney had a pattern of ignoring deadlines and warnings from the opposing party).

additional payment of $1,000, and, accordingly, he believed that Wohr would file an answer in the case. He pointed to the fact that Wohr represented him in the two other Denton County grievance matters as evidence of an attorney-client relationship that established Bitter's reasonably reliance on Wohr to file an answer. He also asserted that before retaining Wohr in those two matters, he had filed answers in the cases, which was "highly probative to suggest that [Bitter] would have filed a timely answer in [these three cases]" had he not relied on Wohr to file an answer. He asserted that as of the date of the default judgments, he was under the impression that an answer had been filed by Wohr. Bitter did not, however, state that he was under this impression based on any affirmative representation that Wohr made to him about the status of his case.[17] He argued alternatively that "if [the Commission] attempts to argue that [Bitter] did not hire Wohr on this case, [Bitter] reasonably believed that he had hired Wohr on this case."

In his affidavit, Bitter attempted to further explain why he believed Wohr would file an answer in the three cases. He stated that on September 16, 2011, he hired Wohr for representation in these three cases, ten days after the petitions

---

[17]*See, e.g., Lowe v. Lowe*, 971 S.W.2d 720, 724 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (considering a case in which the defendant relied on a lawyer to file an answer but the lawyer failed to do so and holding that "where (1) the lawyer has misled the client, or wholly failed to perform his or her professional duties, and (2) the client is free of responsibility and knowledge, the client meets the first prong of *Craddock* by showing her own lack of knowledge or lack of responsibility").

were filed. He again asserted that he had paid Wohr a retainer of $2,000 and later paid him an additional $1,000 toward fees for the cases.

Bitter stated that he was served with citation in these three cases on November 21, 2011, while at the Denton County courthouse on another matter for which Wohr was representing him, and Wohr was present at the time. When Bitter was served, he told Wohr that he had been served with process in the matters.

Bitter further asserted that he was not aware that Wohr had not filed an answer in these actions and that prior to hiring Wohr for the two unrelated grievance matters, Bitter represented himself in those matters and filed timely answers to them. Bitter asserted that he did not file an answer because he believed Wohr would do so and that "it stands to reason that I would have filed an Answer in [these cases], had I not reasonably relied on [Wohr] to file such Answer[s]."

Bitter further asserted that prior to the rendering of the default judgments, Wohr told him several times that Wohr was in the process of negotiating a settlement on all of Bitter's grievances, that he and Wohr had "significant discussions on such settlement," and that he and Wohr "had several discussions on what he purported to be the State Bar of Texas 'settlement offer' of a 2-year suspension with the first 90 days served actively and the remaining 21 months probated." He asserted that "[b]ased on the fact that I had retained [Wohr]'s services for representation in this case and his statements to me that he was in

12

the process of negotiating a settlement on all of my grievances, my failure to file an answer was not intentional" and was not "the result of conscious indifference." He also asserted that he was incarcerated from January 11, 2012 through January 15, 2012 and from January 18, 2012 through March 1, 2012.

Noticeably absent from these assertions is any excuse for Wohr's failure to file an answer on Bitter's behalf. Because Bitter asserted that he relied on his attorney to file an answer, he had to explain why his attorney did not file an answer.[18] He offered no explanation whatsoever for his attorney's failure to file an answer, and he did not assert that his attorney misrepresented to him that an answer had been filed.[19] And although settlement negotiations can in some circumstances excuse a failure to answer, Bitter did not offer any assertions or evidence that Wohr did not answer because he believed that ongoing settlement negotiations made answering the suits unnecessary.[20] Nothing in the motions or supporting affidavits, taking the statements in them as true, demonstrated that Wohr's failure to answer was not intentional or the result of conscious indifference. Accordingly, Bitter failed to allege facts that, if true, would entitle him to relief and therefore did not show his entitlement to new trials.

---

[18] *See McMurrey*, 858 S.W.2d at 391.

[19] *See Lowe*, 971 S.W.2d at 724.

[20] *Gotcher v. Barnett*, 757 S.W.2d 398, 402 (Tex. App.—Houston [14th Dist.] 1988, no writ).

This case presents an unusual procedural situation, however, because although the Commission did not have to controvert Bitter's allegations (since he did not satisfy *Craddock*), it filed responses that, along with the affidavit of Wohr attached to those responses, support the first *Craddock* element in the limited sense that they provide what Bitter's affidavit was missing—an explanation for why Wohr did not file an answer. It is not, however, an explanation that ultimately helps Bitter because it controverts Bitter's allegation that he reasonably relied on Wohr. In short, Wohr's explanation for why he did not file an answer for Bitter is that he did not represent Bitter in these actions.

Regarding his representation of Bitter, Wohr stated unequivocally that he was not hired to represent Bitter in these three cases. He then explained that Bitter had hired him to represent him in an unrelated criminal matter, stating that

> I was hired as attorney of record to represent [Bitter] in a criminal case . . . on September 12, 2011, in the lobby of the courtroom, at a hearing where Bitter had previously assured the Court [that] he was going to appear with counsel. I was paid a fee solely in that case, and that case has been subsequently been disposed.

Regarding the other two grievance matters in which Wohr represented Bitter, Wohr stated,

> I had at some point after September 12, 2012 become aware specifically of [the other two grievance actions]. I briefly discussed these two matters with [Bitter] and offered to assist him in resolving the issues in them as I was sympathetic to his desire to retain his license. I contacted counsel for [the Commission] in those cases, and made an appearance in those specific cases.

14

But as to the three cases on appeal here, Wohr stated that he did not receive a fee to represent Bitter in those matters, was not present when Bitter was served with citation for them, did not tell Bitter that he would file an answer on his behalf, and was not told by Bitter that he had been served with citation in them. He further stated that Bitter did not give him a copy of the citation or petition in these three matters and did not discuss them with him. Wohr learned during his representation of Bitter in the other two disciplinary matters that "there were likely other pending disciplinary actions at different stages." Wohr offered to help Bitter prepare *pro se* answers if Bitter brought the complaints to his office, but Bitter "never brought any of the complaints or provided [Wohr] with any specifics regarding them."

As to Bitter's assertion that Wohr was supposedly negotiating a settlement on all of his grievances, Wohr stated that he never told Bitter that he was negotiating a settlement on all of his grievances. He did speak with Bitter about a negotiation of the other two grievance matters, and Wohr gave his opinion "that were [Bitter] to enter into agreements on those cases and show the State Bar he was serious about addressing his issues and reimbursing the clients, that it would be favorable in settling other cases that arose during the same time period." Wohr summarized his involvement on those cases by saying,

> To be very clear, I represent Bitter in two grievances: (1) Cause No. 2011-20417-158 pending in the 158th Judidical District Court of Denton County and (2) Case No. D0060937626 pending before an Evidentiary Panel of the District 14 Grievance Committee. I have discussed possible settlements of those two cases with counsel for

15

[the Commission] and relayed those discussions to Bitter. These were two specific settlement discussions on only the two reference[d] cases in which I have made an appearance and represent Bitter.

Wohr also made statements that he did not believe that he had done anything that would have led Bitter to believe that Wohr would file an answer on his behalf in the three cases involved in this appeal, to believe that Wohr would represent him in those cases, or to believe that he was in the process of negotiating a settlement on all of Bitter's grievances, "as [Wohr] was not then, and [is] not now, aware of how many or any specifics of his other grievances, and had no knowledge of" the specific grievances involved in these three cases.

Looking at the two affidavits, one cannot reasonably conclude that ambiguous acts or statements by Bitter or Wohr gave rise to a misunderstanding between them about whether Wohr represented Bitter. Bitter claimed that Wohr was present when he was served with citation in these actions; Wohr stated that he was not present at the time. Bitter stated that Wohr told him that he was engaged in settlement negotiations with the State Bar on these disciplinary actions; Wohr stated that he told Bitter no such thing. Bitter stated that he paid Wohr to represent him in these actions; Wohr stated that Bitter did not. Bitter stated that Wohr agreed to represent him in these three actions; Wohr stated that he told Bitter that, if Bitter brought the pleadings to Wohr's office, Wohr would help Bitter draft *pro se* answers.

Looking at all the evidence in the record, the trial court did not abuse its discretion by determining that Bitter did not meet the *Craddock* requirements. Even though the trial court did not hold a hearing and even though there was a dispute about whether Wohr represented Bitter, Bitter's and Wohr's statements are so directly contradictory that the trial court would have to believe one or the other but not both. The affidavits do not portray conversations or actions that could give rise to multiple interpretations such that Bitter could reasonably believe that Wohr represented him and Wohr could at the same time reasonably believe that he did not. And if *either* person is correct, then Bitter failed to meet his burden as to *Craddock*'s first prong. If Wohr's affidavit is correct, then Bitter provides no explanation for why he personally did not file an answer that would satisfy *Craddock*. If Wohr represented Bitter, then we have no explanation for Wohr's failure to answer that would negate conscious indifference.

Notably, Bitter does not argue on appeal that Wohr misstated the facts in his affidavit or that Wohr made any misrepresentations to him that an answer had been filed.[21] He argues only that Wohr's affidavit shows that there was a misunderstanding. He asserts that "[a]lthough Wohr testifies that he did not represent Bitter on these specific matters—just other disciplinary and criminal matters—Wohr has not testified that he actually told Bitter that he would not represent him in the lawsuits now on appeal." And he states that "an attorney

---

[21] *See, e.g.*, *Lowe*, 971 S.W.2d at 722–23.

who has represented a client over a substantial period in a variety of matters has a duty to notify his client whether an attorney-client relationship still exists, so that the client will not mistakenly assume the lawyer is looking after the client's affairs." But Wohr did state that he was not present when Bitter was served with citation, did not know that Bitter had been served with citation in these specific cases, never saw these petitions, did not receive a fee for these cases, told Bitter that he would help him prepare *pro se* answers to disciplinary actions in which he did not represent Bitter, and was never told of the specifics of these actions. Before Wohr had any obligation to tell Bitter that he did not represent him in these matters, he first had to have been told about them.[22]

In summary, the record gives rise to only two possible explanations. The first explanation is that Bitter's affidavit is not true. In that case, he offered no explanation that would satisfy *Craddock* for why he did not file an answer. The second possibility is that Wohr's affidavit is not true. Bitter does not dispute the validity of Wohr's affidavit, but even if he did, Wohr's affidavit would then show rather than negate conscious indifference.[23] And even in that case, Bitter's affidavit does not contain any statements about any specific representations that

---

[22]*See, e.g.*, *McMurrey*, 858 S.W.2d at 391 ("[A]n attorney is under no duty to answer a lawsuit until the client is actually served and requests the attorney to file an answer.").

[23]*See, e.g.*, *Dodd*, 2014 WL 242881, at *9–10 (holding that an attorney's acts showed conscious indifference).

18

Wohr made to him about having filed an answer. Bitter, as an attorney, knows the importance of filing an answer.

Bitter takes one part of Wohr's affidavit out of context—that Wohr did not "believe" he had done anything to cause Bitter to believe that Wohr was negotiating a settlement on Bitter's behalf—to argue that this does not show conscious indifference. But Bitter ignores the context in which that statement was made—an affidavit flatly contradicting the factual assertions of Bitter's affidavit. We overrule Bitter's first issue.

In his second issue, Bitter asserts that in appeal 02-12-00198-CV (trial court cause number 2011-40732-362), the trial court abused its discretion by disbarring him and by ordering him to pay restitution to Bardwell because the sanctions were arbitrary and not supported by any guiding principles or evidence in the record. The judgment in that case did not order restitution paid to Bardwell. Although at the conclusion of the hearing, the trial court stated that it ordered restitution in the amount of $2,750, the signed judgment contained no such order. We therefore consider only Bitter's arguments relating to his disbarment.

The relevant part of the trial court's order states:

> The Court, based upon all the pleadings and papers on file in this case and the law applicable thereto, is of the opinion and so finds that the material allegations of Petitioner's Disciplinary Petition are true, and that the acts and conduct on the part of the Respondent set forth in Petitioner's Disciplinary Petition on file herein constitute conduct in violation of Rules 8.04(a)(2), 8.04(a)(3), and 8.04(a)(8) of the Texas Disciplinary Rules of Professional

19

Conduct. The Court further finds as to each such violation that Respondent, Aaron Christopher Bitter, has committed professional misconduct as defined in Rule 1.06 of the Texas Rules of Disciplinary Procedure.

The Court, after considering all of the factors listed in Rule 3.10 of the Texas Rules of Disciplinary Procedure, finds that the proper discipline of the Respondent for each occurrence of professional misconduct is disbarment.

It is, accordingly, ORDERED, ADJUDGED, and DECREED that the Respondent is DISBARRED as an attorney at law in the State of Texas and that his license to practice law is revoked.

Bitter argues that before ordering his disbarment, the trial court was required to consider the factors listed in disciplinary procedure rule 3.10 and that there is no evidence in the record to support the trial court's consideration of any of these factors.

The trial court's judgment reflects that it considered the factors listed in rule 3.10. Those factors are as follows:

A. The nature and degree of the Professional Misconduct for which the Respondent is being sanctioned;

B. The seriousness of and circumstances surrounding the Professional Misconduct;

C. The loss or damage to clients;

D. The damage to the profession;

E. The assurance that those who seek legal services in the future will be insulated from the type of Professional Misconduct found;

F. The profit to the attorney;

G. The avoidance of repetition;

H. The deterrent effect on others;

20

I. The maintenance of respect for the legal profession;

J. The conduct of the Respondent during the course of the Committee action;

K. *The trial of the case*; and

L. *Other relevant evidence concerning the Respondent's personal and professional background.*[24]

The rule also allows the trial court to consider the respondent's disciplinary record.

Nothing in the rule requires the trial court to make a finding that the sanction is warranted based on every factor, and under the rules, the trial court may consider the trial of the case. Accordingly, the trial court could consider the facts in the petition, which were deemed admitted upon the granting of the default judgment finding professional misconduct.[25]

Bitter contends that the Commission argued that Bitter should be disbarred based on his charging of Bardwell's credit card but that it produced no testimony on the matter, that it was "undisputed" that the amounts charged to the card were refunded to Bardwell, and that there was no evidence that Bitter did not perform the legal work for which he charged the card. But by the default judgment, Bitter admitted to the allegations in the Commission's petition. In its petition, the

---

[24]Tex. Rules Disciplinary P. R. 3.10, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A-1 (West 2013) (emphasis added).

[25]*See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) ("In cases of no-answer default . . . a defaulting defendant admits all facts properly pled in the plaintiff's petition except for the amount of unliquidated damages.").

Commission alleged that Bitter had Bardwell's permission to charge an initial payment of attorney's fees of $750; that Bitter subsequently made three charges on the card of $1,000, $750, and $1,000, respectively; and that these charges were made without notice to or permission from Bardwell. Furthermore, in assessing sanctions, the trial court was permitted to consider other relevant evidence concerning Bitter's professional background and his disciplinary record. Under the facts of this case, we cannot hold that the trial court abused its discretion by rendering a judgment of disbarment.

Bitter further argues that he testified that he did have Bardwell's authorization to make the charges. This testimony, however, was by way of the affidavit he attached to his motion for new trial, not evidence that the trial court had before it when it rendered the judgment of disbarment.[26] And we note that although Bitter asserts that Bardwell admitted in an affidavit filed in the response to his new trial motion that the charges were reversed, Bardwell's statement was that the charges were reversed by his credit card company after he disputed the charges, not because Bitter voluntarily refunded the money. We overrule Bitter's second issue.

---

[26] *See Finley v. Steenkamp*, 19 S.W.3d 533, 540 n.3 (Tex. App.—Fort Worth 2000, no pet.) (stating that we review the actions of a trial court based on the evidence before the court at the time it acted); *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted.").

In Bitter's third issue, he argues that the trial court abused its discretion by overruling his objection to Judge Skeen's appointment and his request that a replacement judge be appointed. He contends that the overruling of his objection denied him the opportunity to have his motion for new trial heard.

Bitter filed a motion objecting to Judge Skeen's assignment in which he stated that he had first learned of Judge Skeen's appointment when he received the default judgment. He stated that Judge Skeen's court coordinator had notified him that Judge Skeen "is in a murder trial and unavailable to hear" Bitter's motion for new trial, and, accordingly, he requested the appointment of a replacement judge within thirty days. Judge Skeen overruled the objection in an order that listed the dates on which he would be unavailable due to the murder trial.

Rule 3.02 of the rules of disciplinary procedure states that upon receipt of a disciplinary petition, the Supreme Court of Texas shall appoint a judge to preside in the case. The rule further provides that

> [t]he judge appointed *shall be subject to objection*, recusal[,] or disqualification *as provided by law*. The objection, motion seeking recusal[,] or motion to disqualify must be filed by either party not later than sixty days from the date the Respondent is served with the Supreme Court's order appointing the judge. In the event of objection, recusal[,] or disqualification, *the Supreme Court shall appoint a replacement judge within thirty days.*[27]

---

[27]Tex. Rules Disciplinary P. R. 3.02, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A-1 (West 2013) (emphasis added).

23

Bitter contends that the language of the rule dictates that because he filed an objection to Judge Skeen's appointment, he was automatically entitled to a replacement judge. The Commission counters that Bitter is reading the last sentence of the rule out of context. It points out the earlier sentence stating that the assigned judge is "subject to objection . . . as provided by law" and argues that this part of the rule "is a gate through which a party must pass before getting to the final sentence of the rule." The Commission also contends that Bitter did not file his objection in time to prevent the overruling of his motions for new trial by operation of law prior to the deadline of assigning a replacement judge.

We agree with the Commission that the last sentence of the rule must be read together with the rest of that rule and that a replacement judge must be appointed within thirty days in the event of an objection, recusal, or disqualification as provided by law. We therefore must look at the provisions provided elsewhere in the law for objecting to the appointment of a trial judge.

Bitter points out that the order appointing Judge Skeen states that the assignment was made "pursuant to Texas Government Code, § 74.057,"[28] and he argues that when a party objects to an assignment made under that chapter of the government code, removal of the assigned judge is mandatory.

---

[28]Tex. Gov't Code Ann. § 74.057(a) (West 2013) ("In addition to the assignment of judges by the presiding judges as authorized by this chapter, the chief justice may assign judges of one or more administrative regions for service in other administrative regions when he considers the assignment necessary to the prompt and efficient administration of justice.").

24

Government code section 74.053 addresses objections to assignments made under that chapter. Subsection (b) states that "[i]f a party to a civil case files a timely objection to the assignment, the judge shall not hear the case."[29] Subsection (e) provides, however, that "[a]n active judge assigned under this chapter is not subject to an objection."[30] Accordingly, as provided by law, a judge appointed under this chapter is not subject to objection if the judge is an active judge.[31] Section 3.02 of the disciplinary rules of procedure specifically requires that a judge appointed under that rule be an active district judge.[32] Bitter points to no other basis for his argument that Judge Skeen was automatically obligated to remove himself from the case upon Bitter's objection. Furthermore, we note that the basis of Bitter's objection was that Judge Skeen would be unavailable to hear the motion for new trial, but the order overruling the objection indicated that Judge Skeen was available between the dates on which he heard voir dire and the date that the case was set for trial. We overrule Bitter's third issue.

## Conclusion

Having overruled Bitter's issues, we affirm the trial court's judgments.

---

[29] *Id.* § 74.053 (West 2013).

[30] *Id.* § 74.053(e).

[31] *See id.* § 74.041 (West 2013) (defining "active judge" as "a person who is a current judicial officeholder").

[32] Tex. Rules Disciplinary P. R. 3.02.

25

                                        /s/ Lee Ann Dauphinot
                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  May 15, 2014