**Opinion filed May 8, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00015-CV
_____

**IRMA J. LEAL, Appellant**

**V.**

**DANIEL LOPEZ, Appellee**

**On Appeal from the 446th District Court**

**Ector County, Texas**

**Trial Court Cause No. E-21-09-1286-FM**

## M E M O R A N D U M   O P I N I O N

This appeal concerns the trial court's denial of a timely filed motion for new trial that challenged the trial court's entry of a default judgment. Appellee, Daniel Lopez, filed the underlying suit for divorce against Appellant, Irma J. Leal. Leal failed to appear at a rescheduled final hearing setting, and the trial court signed a default judgment in favor of Lopez. In its judgment, the trial court granted Lopez's request for a divorce, appointed Leal and Lopez as joint managing conservators of their child, ordered that the child's primary residence be restricted "within Ector County, Texas and Hidalgo County, Texas," ordered the parties to comply with the

terms of the standard possession order in the absence of a mutual agreement regarding the possession of their child, set Lopez's support obligations, and divided the parties' marital estate.

In two issues, Leal asserts that the trial court abused its discretion when it denied her motion for a new trial because (1) neither she nor her trial counsel received "proper notice" of either the final hearing setting or resetting, and (2) she presented sufficient evidence to satisfy the three *Craddock* prongs. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). We reverse and remand.

## I. *Factual Background*

Leal and Lopez were married on or about August 22, 2020; one child was born during their marriage. On September 14, 2021, Lopez filed his original petition for divorce. On December 2, 2021, Lopez filed an amended petition, and Leal was thereafter served with the amended petition, a temporary restraining order (TRO), and a notice of hearing to show cause on December 17. Leal's first trial attorney, Ismael Rivera, filed a motion to transfer venue and a plea to the jurisdiction on January 7, 2022, which the trial court set for a hearing for February 10.

On March 15, 2023, the trial court signed a TRO and set a hearing on the TRO for March 30.[1] At some point, the trial court reset the TRO hearing for April 13. On April 11, Leal's second trial attorney, Lane Haygood, filed an amended motion to continue the TRO hearing, which the trial court granted on April 12; the trial court reset the TRO hearing for April 20.[2] At the April 20 hearing, Leal and Lopez negotiated a Rule 11 agreement, which the trial court accepted.

On May 17, 2023, Leal's third trial attorney, Teresa Sanchez, filed a motion to withdraw in which she requested that the trial court allow her and Haygood

---

[1]The record does not contain an application by either party for a TRO.

[2]The record does not contain Rivera's motion to withdraw.

2

to withdraw as Leal's trial counsel. The trial court granted Sanchez's motion on June 13. Two days later, the trial court signed a TRO and set the TRO for a hearing on June 29.[3] On June 23, the trial court signed an order setting a pretrial hearing for July 28, 2023, at 10:00 a.m. The trial court's order informed the parties that "[a]ttendance at Pre-Trial is mandatory." On July 7, Leal, through her fourth trial attorney, Bruce Foster, filed a "Final Rule 11 Agreement." Following this, on July 12, Leal, acting pro se, filed a document titled "Self-Represented Litigant Request and Consent for Electronic Court Notices" with the trial court.[4]

The trial court held a pretrial hearing on July 28 and, among other things, addressed the parties' July 7 Rule 11 agreement; however, Leal did not appear at this hearing.[5] At the pretrial hearing, Lopez's trial counsel also requested that the trial court schedule a final "prove-up" hearing. Upon the conclusion of the pretrial hearing, the trial court orally announced that a "prove-up" hearing would be set for August 1; later that day, the trial court signed a written order to that effect, stating that the case was set for a final hearing.[6] *See* TEX. R. CIV. P. 21(f)(10).

---

[3]The certificate of service attached to the trial court's order indicates that Haygood and Sanchez, and another individual, JoAnna Keese, were served with the June 15 TRO, which included the June 29 hearing date.

[4]The record does not contain a motion to withdraw that was purportedly filed by Foster prior to Leal's filing of her "Self-Represented Litigant Request." However, we note that the trial court discharged Foster as Leal's trial counsel on August 14 when it granted the motion to substitute counsel filed by Luis De Los Santos, Jr.

[5]At a subsequent "prove-up" hearing on August 1, the trial court made the following statements concerning what occurred at the July 28 hearing: "[Leal has] missed multiple hearings, and [the August 1 hearing] was set from the pretrial docket on Friday [July 28]. [Leal] was present at the pretrial docket, but she refused to follow the Zoom rules, and was finally and subsequently removed from the hearing and not allowed to participate." Despite the trial court's comments, we note that the appellate record does not indicate whether Leal participated in the July 28 hearing via Zoom, nor does the reporter's record from the July 28 hearing show that Leal refused to comply with the trial court's requirements for a party's remote appearance at a court proceeding via Zoom.

[6]The trial court's July 28 order that set a final "prove-up" hearing for August 1 does not include a certificate of service, as it should have.

Leal appeared pro se at the August 1 "prove-up" hearing, which the trial court treated as the parties' final hearing; the trial court also arranged for a Spanish-language interpreter to be present to assist Leal during the hearing. At the beginning of this hearing, the trial court outlined the past events that were pertinent to the case. In its narration, the trial court explained that Leal "had stated to the Court that she just received the divorce decree" and that "[s]he needed a moment to read it." The trial court then stated that Leal had "been sitting in the first row of the gallery in the Court, and watched the two cases go before her . . . and never read her documents." According to the trial court, it believed that at some point after having observed the disposition of other cases before the trial court that day, Leal "realized that there was a defense, and said that instead she had been coerced into the [Rule 11] agreement by [Lopez] and by his attorney." Based on Leal's statements and representations to the trial court at this hearing, the trial court found that "[Leal] has backed into a defense today" and stated that it "[would] not accept any agreement . . . [y]ou will go to trial . . . [and it would] get [Leal] a trial setting."[7]

After it decided to reset the final hearing, the trial court heard testimony from Lopez's attorney concerning attorney's fees that Lopez incurred for the July 28 pretrial hearing and the August 1 hearing. The trial court asked Leal if she had "any questions for this witness" as it related to the attorney's fees. In response, Leal stated "I don't agree . . . I don't have an attorney, because I don't have money." The trial court then awarded Lopez attorney's fees in the sum of $825. In addition, the trial court orally announced that the final hearing would be reset for September 6 at 10:00 a.m. However, the record does not contain a written order or other written

---

[7]We note that any statements or representations purportedly made by Leal—as described by the trial court in its narration—are not contained in the reporter's record.

confirmation signed by the trial court indicating that the final hearing was reset for September 6.

On August 3, Luis De Los Santos, Jr., Leal's fifth trial attorney, filed a motion to substitute counsel,[8] which the trial court granted on August 14. On September 6, the trial court held a final hearing; neither Leal nor De Los Santos appeared. Lopez presented his evidence, and at the conclusion of the hearing, the trial court orally rendered a default judgment, stating that it was granting "all of [Lopez's] requested relief."

On September 18, Leal filed a motion for new trial. In her motion, Leal argued that (1) "[a] new trial should be granted to [Leal] because . . . [t]he time frame allotted between August 14th through September 6th is not sufficient for counsel to review the file and meet with the client to adequately prepare for any hearings scheduled"; and (2) "[a] new trial should be granted to [Leal] because [the trial court] did not give noti[ce] [to] new counsel of any hearings scheduled." The trial court signed its final decree of divorce on October 25.

After a continuance was granted, the trial court set the hearing on Leal's motion for new trial for December 12. Leal and De Los Santos appeared at the motion-for-new-trial hearing. During the hearing, De Los Santos informed the trial court that he had been retained as Leal's trial counsel in early August, and that the trial court approved his substitution as counsel for Leal on August 14.[9] De Los

---

[8]The motion to substitute counsel filed by De Los Santos stated that Foster was the attorney for Leal at the time the motion was filed. The motion also requested that the trial court discharge Foster as Leal's attorney.

[9]While De Los Santos was not sworn-in by the trial court as a witness either before or while he made his statements and proffer to it, we note that unsworn statements made by an attorney may be considered as evidence and be binding on a party. *See Estate of Brown*, 704 S.W.3d 428, 435 (Tex. 2024); *Boucher v. Warrior Crane Serv., LLC*, 698 S.W.3d 344, 352 n.3 (Tex. App.—Eastland 2024, pet. filed) (citing *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 704 (Tex. App.—Texarkana 2018, pet. denied)).

Santos further stated he did not attend the September 6 final hearing setting because he "was unaware of the court setting . . . [and he] didn't receive notice." In explaining his absence, De Los Santos said that Leal had informed him of the September 6 final hearing setting; however, based on his alleged communication with the trial court, he believed that the September 6 setting would be reset. De Los Santos stated that he "suspected" that the trial court had reset the final hearing to a future date because the trial court did not send any written order or other writing to him or Leal confirming the September 6 setting; as such, this misunderstanding resulted in his failure to appear. In addition, De Los Santos stated that there was a "big [communication] confusion" between himself and Leal regarding the September 6 setting because Leal had appeared at the August 1 hearing pro se. After De Los Santos concluded his proffer to the trial court, it stated that the failure to appear at the September 6 final hearing setting "sound[ed] like it was an accident, that it was a mistake, [and] that [De Los Santos] didn't just willfully and intentionally skip out on [the] court date."

Leal testified at the hearing. She stated that Lopez was a danger to their child and that he had not seen their child since May 2023. She testified that Lopez does not have a relationship with their child and does not interact or communicate with their child telephonically or via in-person visits. Leal testified that Lopez had been to her home and threatened her, and as a result she filed a complaint with law enforcement. Leal stated that (1) Lopez had pending charges against him for family violence, (2) she had received a letter from CPS regarding Lopez's family violence charges, and (3) Lopez had physically abused her in the past. Leal also stated that their child and Lopez's mother had witnessed Lopez's violent and aggressive behavior toward Leal, and that emergency services were dispatched to her home after an incident where Lopez had struck her.

When asked about her knowledge of Lopez's pending family violence charges, Leal confirmed that she had "checked with the district attorney" and that two charges of domestic violence were pending against Lopez. When questioned during cross-examination concerning her meeting with the district attorney, Leal was unable to recall the district attorney's name or the date the meeting took place.

Regarding the August 1 hearing, Leal initially testified that she appeared at the hearing and the trial court informed her that there would be a setting on September 6 because Leal did not "follow through" with the parties' Rule 11 agreement. Later, when Leal was questioned by Lopez's trial counsel about the final hearing reset date, Leal stated that she believed the trial court had reset the final hearing for August 21. Leal testified that she confirmed this setting date (August 21) with Lopez's attorney on August 1 outside the courtroom after the hearing concluded that day, and she then noted the August 21 date in her cell phone calendar.

According to Leal, on or around August 3, she contacted De Los Santos regarding possible legal representation, and she retained De Los Santos that same day. Leal confirmed that she "never intended to skip out on [the September 6] proceeding," and that it was her understanding that "[they] were going to file some paperwork[,]" the hearing "was going to be changed, and [she] was going to be notified of the next court [date]."

## II. *Standard of Review and Applicable Law*

We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (citing *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994)); *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). In determining whether a trial court abused its discretion, we must determine whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the trial

7

court acted arbitrarily or unreasonably. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

It is axiomatic that a default judgment should be set aside, and a new trial granted, if: (1) the defendant's failure to answer was not intentional or the result of conscious indifference but, rather, was due to an accident or mistake; (2) the defendant sets up a meritorious defense to the plaintiff's asserted claims; and (3) the motion is filed at such time that granting a new trial would not result in delay or otherwise injure the plaintiff. *See Craddock*, 133 S.W.2d at 126. When a defaulting party moves for a new trial and meets each *Craddock* prong, a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (citing *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994)).

When, as in this case, a trial court grants a default judgment because the defendant fails to appear for trial or a final hearing, the same *Craddock* test applies. *See LeBlanc v. LeBlanc*, 778 S.W.2d 865 (Tex. 1989) (The *Craddock* factors apply to all default judgments, those "entered on [the] failure of a defendant to file an answer and those entered on failure to appear for trial." (citing *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966))). Further, in the absence of findings of fact and conclusions of law, the trial court's denial of a motion to set aside a default judgment and for new trial must be upheld on any legal theory supported by the evidence. *See Strackbein*, 671 S.W.2d at 38.

### III. *Analysis*

#### A. *Appendices and Documents Attached to Appellant's Brief*

At the outset, we note that Leal refers to and relies on multiple documents— some of which are photocopies of other documents—that are included in an appendix that is attached to her appellate brief; apart from the divorce decree, these documents do not appear in the appellate record. *See* TEX. R. APP. P. 34.1 ("The

appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."). An appendix is not a substitute for the clerk's record. *See Bell v. State for S.E.G.*, 659 S.W.3d 21, 24 (Tex. App.—El Paso 2021, pet. denied). As such, we may only consider an appeal that is based upon the evidence and documents contained within the appellate record, not upon documents attached as an appendix to an appellate brief. *See Watson v. Schrader*, No. 11-18-00064-CV, 2020 WL 976939, at *1 (Tex. App.—Eastland Feb. 28, 2020, pet. denied) (mem. op.); *see also* TEX. R. APP. P. 38.1. Therefore, because the appendix and its inclusions attached to Leal's appellate brief are not part of the appellate record, we cannot and do not consider them. *See Children of the Kingdom v. Central Appraisal Dist. of Taylor Cnty.*, 674 S.W.3d 407, 415 n.3 (Tex. App.—Eastland 2023, pet. denied); *Creekside Rural Invs., Inc. v. Hicks*, 644 S.W.3d 896, 906 n.5 (Tex. App.—Eastland 2022, no pet.); *Bell*, 659 S.W.3d at 24; *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

B. *Notice of the Final Hearing – Preservation of Complaint*

In her first issue, Leal argues that because she did not receive "proper notice" of either the August 1 final hearing setting or the September 6 reset date, to be entitled to a new trial, she is only required to establish the first *Craddock* prong. *See Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005). Lopez argues that Leal did not preserve this complaint for our review.

A party may waive a complaint regarding inadequate notice of a trial setting if the party does not properly preserve the complaint. *Abend v. Fed. Nat'l Mortg. Ass'n*, 466 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Dreyer v. Wislicenus*, No. 11-18-00234-CV, 2020 WL 5490727, at *6 (Tex. App.—Eastland Sept. 11, 2020, no pet.) (mem. op.). To preserve a complaint for appellate review, a party must (1) make a timely request, objection, or motion in the

trial court that states the specific grounds for the ruling sought, unless the specific grounds are apparent from the context, and (2) obtain a ruling from the trial court or object to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a); *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017); *Matter of Guardianship of E.M.D.*, No. 11-20-00042-CV, 2020 WL 6193990, at *10 (Tex. App.—Eastland Oct. 22, 2020, pet. denied) (mem. op.).

Although Leal complains about the lack of "proper notice" for the August 1 hearing setting, it is the lack of "proper notice" for the final hearing setting that the trial court rescheduled for September 6 that is of significance here. In her motion for new trial, which was timely filed, and at the hearing on the motion, Leal and De Los Santos clearly expressed that neither of them received proper notice of the September 6 final hearing reset date. Because Leal timely objected to the trial court's default judgment on this basis, and because she requested and obtained a ruling on her motion—the grounds and context of which are apparent—we conclude that she preserved her complaint for our review on this point. Therefore, we will address the merits of Leal's complaints.

C. *The Craddock Factors*

When the first prong of the *Craddock* test is established by proof that the defaulted party was not provided notice of a trial or final hearing setting, it is a violation of due process if the trial court further requires that the second and third *Craddock* prongs be established before it grants a new trial. *Mathis*, 166 S.W.3d at 744; *see Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988) (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988)). Here, Leal asserts that she sufficiently established each *Craddock* prong and, because all elements were met, the trial court abused its discretion when it denied her motion for new trial. In this instance, because she also claims that neither she nor De Los Santos received proper notice of the September 6 final hearing setting, her satisfaction of the first *Craddock* prong,

without more, would necessarily require that we vacate the trial court's judgment and remand this cause to the trial court for a new trial. Therefore, in light of Leal's assertion of the lack of proper notice, the initial question that we must determine is whether she has satisfied the first *Craddock* prong.

### 1. *Intentional or Consciously Indifferent Conduct*

Leal may satisfy the first *Craddock* prong if the factual assertions in her verified motion for new trial and the evidence she presented, when taken as true, would negate any intentional or consciously indifferent conduct by her or De Los Santos. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012); *Dolgencorp*, 288 S.W.3d at 925; *R.R.*, 209 S.W.3d at 115; *Strackbein*, 671 S.W.2d at 39; *Ivy*, 407 S.W.2d at 214; *Craddock*, 133 S.W.2d at 126. Whether a defendant's failure to appear was intentional or due to conscious indifference is determined based on the knowledge and acts of the defendant. *R.R.*, 209 S.W.3d at 115. "Consciously indifferent conduct occurs when 'the defendant knew it was sued but did not care.'" *Sutherland*, 376 S.W.3d at 755 (quoting *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006) (per curiam)); *R.R.*, 209 S.W.3d at 115.

The historical trend in default judgment cases has been in favor of the liberal granting of new trials and allowing litigants to resolve their disputes on the merits. *In re A.J.M.*, No. 11-20-00222-CV, 2021 WL 3923300, at *4 (Tex. App.—Eastland Sept. 2, 2021, no pet.) (mem. op.); *see, e.g.*, *Tex. Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 650 (Tex. App.—San Antonio 2002, pet. denied). To set aside a default judgment, "some excuse, although not necessarily a good one" is sufficient to show that the defendant did not act intentionally or with conscious indifference. *R.R.*, 209 S.W.3d at 115 (quoting *Drewery*, 186 S.W.3d at 576); *Craddock*, 133 S.W.2d at 125. Thus, almost any offered excuse will carry the day. Moreover, if the record shows that the movant's factual assertions are uncontroverted, the trial court must accept the uncontroverted assertions as true. *See Drewery*, 186 S.W.3d at 576; *Strackbein*,

671 S.W.2d at 38. Therefore, the reason(s) or excuse(s) offered by Leal or De Los Santos for failing to appear at the September 6 final hearing, if accepted as true, would be enough to meet Leal's burden as to the first *Craddock* prong. *Walker v. Gutierrez*, 111 S.W.3d 56, 64 (Tex. 2003).

Here, De Los Santos explained to the trial court that he failed to appear for the September 6 final hearing because: (1) he was unaware of and did not receive notice of this setting; (2) he believed the final hearing setting would be reset to a future date; (3) he did not receive any written order or other written confirmation from the trial court that the final hearing was scheduled for and would proceed on September 6; and (4) there was a significant lapse in communication regarding whether the final hearing would proceed on September 6. Moreover, Leal testified about two different dates that she believed the final hearing would be held—August 21 and September 6—and that she never intended to avoid appearing at the final hearing. De Los Santos's explanations and Leal's testimony on this point are uncontroverted. And, after De Los Santos's proffer, the trial court stated that De Los Santos's failure to appear at the September 6 final hearing "sound[ed] like it was an accident, that it was a mistake, [and] that [he] didn't just willfully and intentionally skip out on [the] court date."

A fundamental requirement of due process is notice. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Barrientos v. Barrientos*, 675 S.W.3d 399, 405 (Tex. App.—Eastland 2023, pet. denied). The United States Constitution's Due Process Clause and the Texas constitution's Due Course of Law Clause require that adequate procedural due process be afforded to all parties to a judgment, which includes notice of trial court proceedings. *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 188–89 (Tex. 2022); *Barrientos*, 675 S.W.3d at 405. Such notice must be "reasonably calculated, under all the circumstances, to apprise [all] interested parties of the pendency of the action and afford them an opportunity to

12

present their objections." *Mullane*, 339 U.S. at 314. That opportunity "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). When parties are not afforded a meaningful opportunity to be heard, "the remedy for a denial of due process is due process." *Univ of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995); *Barrientos*, 675 S.W.3d at 405.

We conclude that the uncontroverted explanations proffered by De Los Santos—which the trial court accepted as true—and the reasons or excuses offered by Leal for failing to appear at the September 6 final hearing, i.e., the lack of proper notice, are sufficient to carry Leal's burden as to the first *Craddock* prong. *See R.R.*, 209 S.W.3d at 115 (citing *Craddock*, 133 S.W.2d at 125); *Drewery*, 186 S.W.3d at 576. Therefore, because Leal satisfied the first *Craddock* prong, due process requires that we set aside the trial court's default judgment and remand this cause to it for a new trial. *Mathis*, 166 S.W.3d at 744; *see Lopez*, 757 S.W.2d at 722 (citing *Peralta*, 485 U.S. 80); *see also A.J.M.*, 2021 WL 3923300, at \*5.

Accordingly, we sustain Leal's first issue. Because of our holding, typically it would not be necessary for us to consider the application of the other two *Craddock* factors. *See* TEX. R. APP. P. 47.1. However, in this instance, we will because (1) even if Leal's due process argument either fails or was not preserved for our review as Lopez suggests, Leal, as we have held, satisfied the first *Craddock* prong, and (2) based on the record before us and the application of the other two factors, which we discuss below, we conclude that Leal satisfied the second and third *Craddock* prongs and would still be entitled to a new trial.

### 2. *Meritorious Defense*

Next, to obtain a new trial, and in the absence of a due process/lack of "proper notice" complaint, Leal would be required to *set up* a meritorious defense. A meritorious defense may be set up by facts alleged in her motion, any supporting

affidavits, and other presented evidence, regardless of whether the proffered facts are controverted.  *See Evans*, 889 S.W.2d at 270; *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 392 (Tex. 1993); *see also Konkel v. Otwell*, 65 S.W.3d 183, 187 (Tex. App.—Eastland 2001, no pet.).

Leal argues that she set up a meritorious defense to the issues addressed by the trial court in its default judgment concerning (1) the parties' conservatorship and possession of their child, and (2) Lopez's child support obligations.  To the contrary, Lopez argues that Leal did not "identify" a defense to the child support issue at the motion-for-new-trial hearing, and that her testimony is insufficient to show that a legitimate defense exists to his family violence charges.

The second *Craddock* prong is difficult to apply in family law cases that concern conservatorship, child custody, and child support obligations because the trial court's primary consideration in such circumstances is the best interest of the child.  *In re A.P.P.*, 74 S.W.3d 570, 575 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (citing *Lowe v. Lowe*, 971 S.W.2d 720, 724–727 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)).  When the parties' dispute focuses on the custody and possession of a child, trial courts consider the *Holley* factors in making its best interest determination.  *Id.*  These factors include, but are not limited to:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

14

The record shows that Leal testified at the motion-for-new-trial hearing about Lopez's violent tendencies and the incidents of domestic violence he allegedly committed. In describing one such incident, Leal stated that their child and Lopez's mother witnessed Lopez physically abuse Leal, which resulted in emergency services being dispatched to her home. Leal further testified that Lopez had threatened and abused her in the past, and that CPS contacted her about Lopez's domestic violence charges. According to Leal, Lopez had not developed a relationship with their child, he had not been involved in their child's life since May 2023, that she has primary custody of their child, and that Lopez had made no effort to interact with their child.

Leal's testimony presents facts that apply directly to several of the *Holley* best-interest factors, including, but not limited to (1) the emotional and physical needs of the child now and in the future, (2) the emotional and physical danger to the child now and in the future, (3) the acts or omissions of the parent, (4) the stability of the home, and (5) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *See Holley*, 544 S.W.2d at 372. As such, Leal presented facts that, if shown at trial, could result in a different outcome regarding the custody and possession of the child in the underlying divorce suit. *See McMurrey*, 858 S.W.2d at 392; *A.P.P.*, 74 S.W.3d at 575; *Lowe*, 971 S.W.2d at 724. Accordingly, we conclude that Leal has satisfied the second *Craddock* prong. *See Ivy*, 407 S.W.2d at 215.

### 3. *Delay or Undue Injury*

Finally, to satisfy the remaining *Craddock* prong, Leal must show that the granting of a new trial will not cause delay or injury to Lopez. *See Craddock*, 133 S.W.2d at 126. Factors that must be considered in determining whether delay or injury would result if a new trial was granted are if the movant offers (1) to proceed

15

to trial immediately, and (2) to reimburse the prevailing party for the expenses that party incurred in securing the default judgment. *See Evans*, 889 S.W.2d at 270.

In his closing argument during the motion-for-new-trial hearing, De Los Santos offered to personally reimburse Lopez for the attorney's fees that Lopez incurred as a result of his attorney preparing for and participating in the September 6 and December 12 hearings. De Los Santos further stated that he could be ready for trial immediately and that he would only need "one day" to present Leal's case. Once a movant alleges that the granting of a new trial will not cause undue delay or otherwise injure the plaintiff, the burden shifts to the plaintiff to establish the opposite. *Evans*, 889 S.W.2d at 270. Here, neither Lopez nor his attorney stated or testified that the granting of a new trial would cause any undue delay or injury to Lopez or would negatively affect their ability to present the merits of their case; Lopez only requested court-ordered mediation. Because Lopez did not carry his burden to rebut the offers made by Leal, we conclude that Leal also satisfied the third *Craddock* prong. *See id.*

Accordingly, to the extent it is necessary, we sustain Appellant's second issue.

IV. *This Court's Ruling*

Based on the record before us, we conclude that the trial court abused its discretion when it denied Leal's motion for new trial. Accordingly, we reverse the trial court's judgment and remand this cause to the trial court for a new trial.


W. STACY TROTTER

JUSTICE

May 8, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.